SUFFOLK SAVINGS BANK FOR SEAMEN & others, petitioner.

Suffolk.    November 22, 1889. — February 26, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Savings Bank — State Tax — " Deposits " — Guaranty Fund —
Undivided Profits.*

The guaranty fund and undivided profits of a savings bank are not liable, under the Pub. Sts. c. 13, § 20, to a State tax as "deposits," that term denoting only the amounts deposited in the bank, together with all interest and dividends accruing thereon and payable to depositors.

PETITION, filed June 18, 1889, under the Pub. Sts. c. 13, § 4, for the abatement of a State tax upon the petitioner's guaranty fund and undivided profits. The case was heard upon the pleadings and agreed facts, by *C. Allen*, J., who reserved it for the consideration of the full court, in substance as follows.

In May, 1889, the petitioner, a duly incorporated savings bank, made a return for purposes of taxation to the Treasurer of the Commonwealth, which, in addition to the average amount of deposits in the petitioner's bank for the six months preceding May 1, 1889, included, as then for the first time requested by the Treasurer, the amount of its guaranty fund, required to be set apart by the Pub. Sts. c. 116, § 24, and its undivided profits. This guaranty fund, which had been set apart in each year from 1876 to 1889, amounted in the latter year to $482,605.01. The undivided profits amounted to $431,415.46, being moneys which had been received by the petitioner as interest and as net gain on the sale of real estate acquired by foreclosure, etc., and which had not been apportioned as dividends among its depositors, or added to the guaranty fund, it not being customary for the petitioner to divide all its profits at each dividend day, but to reserve a portion thereof and to keep it invested with the other moneys of the bank. Upon such return being made by the petitioner, a State tax was assessed upon such average amount of deposits, less the exemptions authorized by law, and also upon such guaranty fund and undivided profits. This tax the petitioner paid under protest, and thereupon brought this petition to recover back with interest that portion of it assessed upon such fund and profits, amounting to $2,285.04, on the ground that such portion was assessed without authority of law.

*F. C. Lowell,* for the petitioner.

*H. C. Bliss,* First Assistant Attorney General, for the Commonwealth.

KNOWLTON, J. The controversy in this case relates to the meaning of the word "deposits," in the first part of the Pub. Sts. c. 13, § 20. The petitioner contends that it means the amount due and payable to the depositors, being the amount deposited by them, together with all interest and dividends accruing and payable thereon. The Commonwealth, on the other hand, contends that, as here used, it includes the guaranty fund of the bank and the undivided profits when there are any.

The St. of 1862, c. 224, which is found in part in the Pub. Sts. c. 13, § 20, provided a new method of taxing savings banks. Before its enactment, taxes had been levied on the deposits as the property of individual depositors. Gen. Sts. c. 57, § 150.

The new statute abolished property taxes on moneys held by savings banks, and established an excise tax, to be collected from each bank on the privilege of using its franchise.   It adopted a simple method of ascertaining in each case the amount to be collected, by making it a fixed percentage, to be paid semi-annually, on the average amount of the bank's deposits for the six months preceding the first day of May and the first day of November in each year.   That the excise or duty might be reasonable, as required by our Constitution, it was necessary to ascertain a just basis on which to calculate the amount of the tax, which should show a proper proportion between the benefits received and the sum paid for the enjoyment of them.   Hence this rule was adopted, making the amount of the tax to be paid at stated periods by each bank depend on the extent of its business during the six months next preceding.   The best measure of a savings bank's business is the amount received on deposit and held subject to the call of depositors.   The president and treasurer are required semiannually to make returns under oath of the amount of the deposits by which the excise tax is to be determined.   These amounts are certain and definite, and it is easy for the officers of the bank to perform their duty.   If the returns were to include undivided profits, the amount would be uncertain, and fluctuating from day to day, and impossible to determine otherwise than by a daily estimate of the value of all the assets of the bank.   Such an estimate could never be anything better than a matter of very doubtful opinion, upon which the best men would widely differ.   If it be said that, instead of making daily estimates of values to ascertain the undivided profits, the returns should be according to the estimates which had been formulated and carried into an account on the books as undivided profits, it is obvious that such a method would be arbitrary and incorrect.   The item could be only estimated and approximate when first determined upon and stated in the account.   Inasmuch as the entry would be hardly more than a matter of bookkeeping, it might become very far from true before the officers would think it their duty to change it.   The statute requires a return founded on a computation of exact sums, which can be accurately known, and not on estimates of the values of investments.

Moreover, if the word " deposits " were to be held to mean, not the amount credited to depositors, but the amount that the assets are fairly worth, it would follow, if the investments should greatly depreciate, that the tax should be estimated on a sum less than the amounts credited to depositors.    But the contrary is assumed both by counsel and by the court in *Commonwealth* v. *Barnstable Savings Bank*, 126 Mass. 526, and *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493.    In the former case it appears that the assets were insufficient to pay the depositors, and the full tax was collected while the bank was in the hands of receivers, so long as it was permitted, under certain limitations, to exercise its franchise.    In the latter case no tax was payable, because the bank had ceased to use its franchise.

The constitutionality of the statute has been fully considered both by this court and by the Supreme Court of the United States.    It is very clear that, viewed as a statute creating a tax on property, it would be unconstitutional, because the tax is not proportional.    *Commonwealth* v. *Five Cents Savings Bank*, 5 Allen, 428.    *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312.    *Provident Institution* v. *Massachusetts*, 6 Wall. 611.    Its constitutionality is sustained under that part of Chap. I. Sect. I. Art. IV. of the Constitution of this Commonwealth which authorizes the Legislature " to impose and levy reasonable duties and excises," etc.    Undoubtedly the Legislature, in devising this method of raising money to help defray the expenses of government, had in mind an equitable relation between a payment of this excise tax on account of the privileges which depositors in savings banks enjoy, and a property tax upon an amount of money equal to the deposits.    For that reason, doubtless, it was deemed best to provide that the amount of deposits lawfully held invested in real estate, or in loans secured by mortgages of taxable real estate, should be deducted from the whole amount of deposits, in determining the amount on which the excise tax should be computed.    Pub. Sts. c. 13, § 20.    But these amendatory provisions of the statute do not change the nature of the tax, which can have no validity as a tax on property.

If we were to adopt the theory of the Commonwealth, we should be obliged to give to the word " deposits," as used in

the St. of 1862, c. 224, before the passage of the statute providing for the creation of guaranty funds, (St. 1876, c. 203, § 13,) and before the amendment by the St. of 1881, c. 304, contained in the last part of the Pub. Sts. c. 13, § 20, a meaning different from that which naturally belongs to it, and different from that in which it is used elsewhere.   In the Gen. Sts. c. 57, § 150, it is clear that the word is used in the sense contended for by the petitioner.   In the St. of 1862, c. 224, § 12, it is equally clear that it is so used.   A comparison of §§ 7 and 9 of this chapter with § 8 further indicates that the word "deposits" is not synonymous with assets; and we see nothing to show that it is not used in its ordinary sense in the Pub. Sts. c. 116, § 20, cl. 7, and in the acts from which that section is derived.   St. 1870, c. 226.   St. 1876, c. 203, § 9, cl. 6.   See also Pub. Sts. c. 116, § 20, cl. 4 ; St. 1876, c. 203, § 9, cl. 4.

In learned expositions of the law this court and the Supreme Court of the United States have dealt directly with the question now before us.   Says Chief Justice Bigelow in *Commonwealth* v. *Provident Institution for Savings, ubi supra,* in speaking of the tax : " Its amount is not fixed or determined by a valuation of the property of the bank.   The average of deposits during a certain period includes only the amount credited to depositors. It does not embrace a valuation of the investments made by the bank, or the market value of its property.   The tax is assessed wholly irrespective of investments, and without any regard to the profit or loss made or incurred by the corporations on the property in its possession or on the business which it has carried on.   The average of deposits during the period of time designated in the statute may not be equivalent to the whole property owned by the bank, exclusive of money invested in the securities of the government.   The amount of the tax in no way depends on the aggregate of the investments of the bank.   It must be the same, whether investments have been profitable or otherwise."   In *Provident Institution* v. *Massachusetts,* 6 Wall. 611, 627, this language is used: " Deposits, as the word is employed in that section, are the sums received by the institution from depositors, without regard to the nature of the funds. . . . Valuation of property has nothing to do with determining the amount of the tax, but the amount depends on the average amount

of the deposits for the six months preceding the respective days named, and it is quite obvious that there is no necessary relation between the average amount of the deposits and the amount of the property owned by the institution." Similar doctrine is stated in *Society for Savings* v. *Coite*, 6 Wall. 594, 611, and in *Coite* v. *Society for Savings*, 32 Conn. 173.

We understand the case of *Suffolk Savings Bank, petitioner*, 149 Mass. 1, to be in accord with the views which we have stated. Of the word " deposits " in the part of the section which we are considering, it is said that it " here means the amounts with which the bank stands charged on its books as received from depositors, not any particular part of the investments of the bank." The fact that the deposits on which the tax is to be assessed may be more or less in amount than the value of the assets, is further recognized in the sentence, " Moreover, it is to be remembered that, while the result in a case of a successful bank may be that a small proportion of its total assets may escape taxation, if unsuccessful it has to pay the same tax, although it has no profits, and its total assets, including the guaranty fund, are not enough to pay the deposits in full." Investments are necessarily fluctuating in value, and the substance of the decision is, that, practically, the amount of the deposits fairly represents the property of the bank, and that money invested in real estate should be held to be invested from the deposits. The guaranty fund can in no case exceed five per cent of the deposits, and that is deemed by the Legislature no more than a fair proportion to meet possible losses, and to keep the assets sufficient to pay the claims of the depositors.

In this connection, it should be noted that a savings bank cannot hold an unreasonable amount as undivided profits. The law compels it to divide what can properly be divided. Pub. Sts. c. 116, §§ 25, 26, 27.

A majority of the court are of opinion that the amounts held by the petitioner as a guaranty fund, and as undivided profits, as set out in the petition, were improperly included in the sum upon which the tax was assessed, and that the excess of said tax above the amount legally assessed should be repaid to the petitioner, with interest from the day on which it was paid, and costs.

*Decree accordingly.*