[No. 4798.]

THE AMERICAN SMELTING AND REFINING COMPANY v. THE PEOPLE EX REL. LINDSLEY, DISTRICT ATTORNEY.

1.  Corporations—Taxes and Taxation—Statutory Construction.

   Section 65 of the revenue act of 1902 (Session Laws 1902, page 73) requiring foreign corporations to pay an annual license tax, based upon the amount of capital stock, for the privilege of doing business in this state, is in form an excise tax and is

a tax on the business of foreign corporations levied for the purposes of state revenue and is not a direct tax on property.

2. **Taxes and Taxation—Privileges—Uniformity—Constitutional Law.**

Section 3, article X, of the constitution, providing that all taxes shall be uniform, is applicable only to a direct ad valorem tax on property, and not to a tax upon privileges or occupations.

3. **Taxes and Taxation—Corporations—Constitutional Law—Title of Act.**

The tax levied on foreign corporations by section 65 of the revenue act of 1902 (Session Laws 1902, page 73) is a tax on the business of foreign corporations for the purpose of procuring revenue and not for regulation, and its provisions are within the title of the act, which is, "An Act in relation to Public Revenue."

4. **Corporations—Taxes and Taxation—Forfeiture of Franchise—Constitutional Law.**

Section 66 of the revenue act of 1902, which provides that every corporation failing to pay the taxes provided in the preceding sections shall forfeit its right to do business within the state until such tax is paid, merely provides a remedy for the collection of the tax and a corporation is denied no constitutional right when that penalty is enforced against it in a judicial proceeding for failure to pay the taxes.

5. **Same—Quo Warranto.**

In an action of quo warranto against a foreign corporation to forfeit its franchise as provided in section 66 of the revenue act of 1902 for failure to pay its taxes as required in said act, the corporation is not in a position to object to the constitutionality of said section 66 because of the provision therein that a failure to pay the tax shall be a defense to any and all actions by such corporation in any court of the state until such tax is paid.

6. **Corporations—Foreign—Filing Fees—Taxes and Taxation.**

The fee paid to the secretary of state by a foreign corporation when it files its certificate of incorporation is not a tax, but the price or bonus paid by the corporation to the state for the privilege of entering and doing business as a corporation in the state, and does not relieve such corporation from the payment of any subsequent legitimate tax for carrying on its business as a corporation. The payment of such filing fee does not exempt a foreign corporation from the payment of the license tax imposed by section 65 of the revenue act of 1902.

16

**7. Corporations—Taxes and Taxation—Constitutional Law.**

Section 65 of the revenue act of 1902, imposing an annual license tax on foreign corporations, is not in violation of section 11, article II, of the state constitution or section 10, article I, of the federal constitution inhibiting the enactment of ex post facto laws, or laws impairing the obligation of contracts, or retrospective in their operation.

**8. Corporations—Taxes and Taxation—Discrimination.**

In imposing a license or business tax upon corporations a state may discriminate against foreign corporations and in favor of domestic corporations.

**9. Taxes and Taxation—Foreign Corporations—Classification.**

Section 65 of the revenue act of 1902, imposing an annual license tax on foreign corporations, is not invalid because it classifies such corporations and requires corporations the par value of whose shares of stock is less than one dollar per share to pay a less tax than those whose shares are of a greater par value.

**10. Taxes and Taxation—Foreign Corporations.**

The fact that a foreign corporation employs only a part of its capital in Colorado and only a relatively small part of its property is situated in the state does not relieve such corporation from the payment of the license tax imposed by section 65 of the revenue act of 1902.

*Appeal from the District Court of the City and County of Denver:*
*Hon. Samuel L. Carpenter, Judge.*

This is a direct proceeding in the nature of *quo warranto* against the respondent company, prosecuted by the people at the instance of the district attorney and the attorney general of the state and having for its object the forfeiture of respondent's corporate franchises for its failure to pay the annual state corporation license tax which the briefs designate "a flat tax." The findings were against respondent and the decree declared forfeited its franchises and forbade it longer to do business within the limits of this state until the tax is paid. Respondent brings the case here by appeal.

Only questions of law are in issue, and these are as to the meaning and validity of certain sections of our general revenue act as applied to the admitted facts.

The respondent (appellant here) is a corporation organized under the laws of the state of New Jersey for the purpose of carrying on a general ore reduction, milling, sampling, smelting and mining business, and, as originally formed, had a capital stock of sixty-five million dollars divided into shares of the par value of one hundred dollars each. Our laws permit foreign corporations to enter into and do business in this state upon compliance with certain statutory conditions. In pursuance thereof, the appellant filed in the office of the secretary of state in 1899 a duly certified copy of its articles of incorporation. The statute then in force was that of 1897 (Session Laws 1897, p. 157), and it required a certain fee to be paid to the secretary of state for the use of the state upon the filing of the certificate, and it was expressly provided that such corporation should not have or exercise any corporate powers or be permitted to do any business in this state until the prescribed fee was paid. Thereafter appellant's original articles of incorporation were amended by increasing its capital stock to one hundred million dollars and, in pursuance of the statute of 1901 then in force (Session Laws 1901, p. 116), an additional fee which all corporations must pay when their capital stock is increased, was by the appellant tendered to and received by the secretary of state and thereupon that officer, as the statute provides, issued to appellant his certificate to the effect that appellant had complied with the laws of Colorado which authorized it to exercise its corporate powers within this state and entitled it to hold property and carry on its business and enjoy its rights and franchises here during the

period of its corporate existence. The two fees paid amount to $15,042.50.

In 1902 the general assembly passed ''An Act in relation to Public Revenue'' (Session Laws 1902, p. 32), sections 64, 65 and 66 of which are material to this case.

Section 64 lays on domestic corporations having a capital stock of twenty-five thousand dollars or over an annual state corporation license tax of ''two cents upon each one thousand dollars of its capital stock.''

Section 65 reads: ''Every foreign corporation which has heretofore obtained, or which shall hereafter obtain, the right and privilege to transact and carry on business within the limits of the state of Colorado, shall, in addition to the fees and taxes now provided for by law, and as a condition precedent to its right to do any business within the limits of this state, pay annually, on or before the first day of May of each year, or at the time of obtaining such right or privilege, and on or before the first day of May of each year thereafter, as the case may be, to the auditor of the state of Colorado, a state license tax as follows:

''Four cents upon each one thousand dollars of its capital stock: Provided, that in cases of foreign corporations the par value of whose shares of stock is less than one dollar per share, they shall pay as such tax at the rate of two and one-half cents per thousand shares.''

Section 66: ''Every corporation which shall have failed to pay the tax provided for in sections 64 and 65, shall, by reason of such failure, forfeit its right to do business within the limits of this state until such tax is paid, and shall be absolutely and wholly deprived of all such rights and privileges, and the fact of such failure may be pleaded and maintained

as an absolute defense to any and all actions, suits or proceedings in law or in equity, brought or maintained by or on behalf of such corporation, in any court of competent jurisdiction within the limits of this state until such tax is paid.''

Appellant refused to pay the state license tax imposed by section 65, and this proceeding was brought to forfeit its franchises for such failure. As justification for the refusal and as grounds for the reversal of the judgment declaring the tax valid, appellant asserts that the sections of the act cited are in violation of several provisions of the state and federal constitutions, to the consideration of which we presently address ourselves.

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. W. W. FIELD, for appellant.

Mr. N. C. MILLER, attorney general, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

1. It will materially lessen our labors and shorten the opinion first to determine the nature of the burden imposed. If we find that it is a business or excise tax, that conclusion will answer some of the most serious objections urged. If it is a direct tax on property, the attorney general is disposed to concede that it would be repugnant to several clauses of our own constitution.

The language of section 65 is that every foreign corporation shall pay annually ''a state license tax as follows: Four cents upon each one thousand dollars of its capital stock: Provided, that in cases of foreign corporations the par value of whose shares of stock is less than one dollar per share, they shall pay as such tax at the rate of two and one-half cents

per thousand shares." The contention of appellant is that this is a direct tax upon capital stock, which is property, and therefore a property tax. The state says that, in the form of a license tax or excise, it is in reality a tax on the business of foreign corporations, and that the capital stock is merely taken as a convenient standard by which to estimate its amount.

"That the franchise, capital stock, business and profits of all corporations are liable to taxation in the place where they do business, and by the state which creates them, admits of no dispute at this day."—*State Railroad Tax Cases*, 92 U. S. 575, 603; *Parsons v. The People*, 32 Colo. 221, 76 Pac. Rep. 666, 670.

In *Louisville Tobacco Warehouse Co. v. Commonwealth of Kentucky*, 57 L. R. A. 33, is found an elaborate note which throws much light upon this section. It is not always easy to determine whether a tax like that here laid is a franchise, excise, business or property tax. It has been said that the usual and most certain test is whether the tax is upon the capital stock *eo nomine*, without regard to its value, or whether based upon its assessed value. If the former, it is not, if the latter, it is, a tax upon property. Otherwise expressed, if a tax is imposed directly by the legislature without assessment, and its amount determined by the number of shares of stock, or amount of business done, or dividends declared, or some such standard, it is not usually considered a property tax; but where there is a precedent valuation of corporate property, and the levy of the tax is made upon such basis, it is usually considered a property tax.

We are clearly of opinion that, though in form this tax is upon the capital stock, it is not a property tax, though the privilege of doing business is a prop-

erty right. It is arbitrarily assessed by the legislature itself without reference to the value of the stock, or property, of the company. The capital stock is simply the standard, or measure, by which the total amount to be paid is computed, and the tax is not on the stock as property. This we think is fully sustained by the authorities.—*People v. Home Ins. Co.*, 93 N. Y. 328, 344; *Lumberville etc. Bridge Co. v. State Bd. of Assessors*, 25 L. R. A. 134 and notes; *State v. Stonewall Ins. Co.*, 89 Ala. 335; *Society for Savings v. Coite*, 6 Wall. 594; *Southern Gum Co. v. Laylin*, 64 N. E. (Ohio) 564, and other cases cited in the note referred to. We hold that the tax authorized by section 65, called a license tax, is, in form of an excise, a tax on the business of foreign corporations, and is levied for the purposes of state revenue. This conclusion is fortified by other sections of the same act which specifically provide for the ascertainment of the value of corporate franchises and their taxation as corporate property upon that value, and still other provisions for the assessment and taxation of their tangible property.

2. The foregoing necessarily disposes of, as untenable, the objection that this section violates the uniformity clause of section 3 of article X of the constitution. That provision is applicable only to a direct *ad valorem* tax on property, and not to a tax upon privileges or occupations.—*Denver City Ry. Co. v. City of Denver*, 21 Colo. 350; *Parsons v. The People*, *supra.*

3. The contention that section 65 is invalid because the thing imposed is in the nature of a license under the police power, and not a tax under the sovereign power of taxation, and therefore not within the title of the act, which is "An Act in relation to Public Revenue," cannot be upheld. That which is levied here is not for regulation, nor is it

traceable to the police power of the state, but finds its sanction in the taxing power, and, while called a state license tax, it is, as already decided, a business tax, laid for the purpose of procuring revenue for state purposes, and therefore the provision is clearly within the title.

4.  Section 6 of article II of our state constitution provides that ''courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and that right and justice should be administered without sale, denial or delay.''  And paragraph 1 of the 14th amendment of the federal constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.  Appellant says that section 66 contravenes these safeguards, because a forfeiture of corporate franchises, for failure to pay a tax, is beyond the power of the legislature to declare, and only the courts, upon due notice and hearing, can so decree, and such a remedy impairs the obligation of its charter contract.  And particularly obnoxious to its charter and constitutional rights to sue and defend is said to be the concluding portion of the section, which declares that a failure of the corporation to pay the tax imposed ''may be pleaded and maintained as an absolute defense to any and all actions, suits or proceedings, in law or in equity, brought or maintained by or on behalf of such corporation in any court of competent jurisdiction within the limits of this state, until such tax is paid.''  As appellant is here called upon in court to justify its refusal to pay the tax, we fail to perceive the pertinency of the first objection.  Besides, the forfeiture is merely a remedy for the due enforcement or collection of the tax, which may be lifted by its payment, and appellant is denied no constitutional right when that penalty, in a proceeding

like this, is visited upon it for failing to make the payment.

Certainly appellant is not in a position to raise the last objection. It will be observed that failure to pay the tax is made a ground of defense to actions or suits brought or maintained by or on behalf of the defaulting corporation. This action is not brought or maintained by or on behalf of appellant and no private litigant is interposing the defense. On the contrary the proceeding is a direct one in the name and by the authority of the people of the state through its attorney general, and the corporation is brought in as a respondent and given full opportunity to be heard. It has been ruled that this is the proper practice.—*Lumber Co. v. Ward,* 30 W. Va. 43. It is difficult to see how appellant may, in this proceeding, raise any such constitutional objection, for we repeat that not only has its right to be heard not been denied, but such right is expressly recognized by summoning it into court to speak.— *McMillan v. Anderson,* 95 U. S. 40. If this were a case brought by or maintained in behalf of appellant against some defendant who sought to interpose the defense which the section authorizes, or if appellant were denied the right to defend in court, the case would be entirely different and we might then be called upon to pass upon the point. That this remedy impairs the obligation of a charter contract is based upon the proposition that no tax can be levied upon appellant's privilege to do business in this state, and this point receives consideration in connection with the next and most important general objection.

5. This is that section 65 violates section 11 of article II of the state constitution and paragraph 1 of section 10, article I, of the federal constitution in that it is an *ex post facto* law, retrospective in its

operation, and impairs the obligation of a contract
between appellant and the state, and conflicts with
other provisions of the state and federal constitu-
tions.   The argument is that by the payment of the
fee exacted by the state at the time the certified copy
of articles of incorporation was filed appellant there-
by acquired, free from the burden of any additional
tax or license fee of any kind whatsoever, the abso-
lute right during the entire term of its corporate
existence to do business as a corporation and to
enjoy within the limits of this state all its rights and
privileges and franchises granted to it by the state;
that if this license tax is, as the state claims, an
occupation or business tax, then its imposition is in
violation of the terms of the contract included in its
charter.

For several reasons we are unable to agree with
appellant.   The fee paid to the secretary of state for
the use of the state when the certificate is filed is
not, in any sense, a tax.   It is the conventional price
or bonus which the corporation pays to the state for
the privilege of entering this state to do business as
a corporation, subject to all legitimate taxation which
the state may impose upon the property that it may
acquire in the exercise of its franchise rights, and
upon the use of the privileges thus purchased.   The
right or privilege *to be* a corporation is a franchise
itself, often called a primary franchise, and while it
was not this franchise which appellant obtained by
the payment of the filing fee, because that had al-
ready been granted by the state of New Jersey, yet
it was for the right to come into this state and do
business as a corporation that the bonus was exacted.
The secondary franchise or right of making use of
the purchased privilege, which the books denominate
the franchise *to do,* is entirely distinct and separate
from the franchise *to be,* or to exist here as a corpo-

ration. These distinctions are recognized by the
highest authorities. In *Central Pacific R. R. v. California,* 162 U. S. 91, 127, the court says: "The
right and privilege or franchise of being a corporation is of value to its members and is considered as
property separate and distinct from the property
which the corporation may acquire." And, we add,
distinct from the franchise or privilege it secures
to carry on the business which it was organized to
transact. In *Lumberville etc. Bridge Co. v. State
Bd. of Assessors, supra,* the same doctrine is announced.

Moreover, unless the filing fee is a tax, and is
to be considered as a substitute for, or the equivalent,
or in lieu of the entire tax which the general assembly intended to exact of foreign corporations for the
privilege of doing business in this state, they cannot
escape the license tax imposed by section 65, even
though the filing fee statute expressly granted the
exemption; for by section 9 of article X of our constitution the power to tax corporations and corporate
property can never be relinquished or suspended.

But, as already observed, the particular claim
here is that the filing fee paid when appellant's certificate was filed with the secretary of state was the
payment of a tax in a lump sum for the privilege
of exercising its corporate franchises and transacting its business in this state for the full term of its
corporate existence, free from all further taxation;
in other words, a business tax for the entire period.
We have already held that this filing fee was the
conventional price for appellant's right of entrance
as a corporation, and when paid merely entitles it to
come into this state to do business as a corporation,
and gives it a standing similar to that which is secured by a domestic corporation which files its original certificate of incorporation with the secretary of

state and pays the prescribed fee therefor. Neither the domestic nor the foreign corporation is thereby relieved of any subsequent legitimate tax for carrying on its business as a corporation.

But suppose it was such a tax as appellant says it is. Aside from the constitutional reason just given it cannot, for another reason, be given the scope claimed for it. There is nothing in the language of the filing statute which expressly or by implication exempts corporations from subsequent or additional taxation either upon their property or upon their right to transact business; and the universal rule in such cases is that exemptions are not favored, but must be clearly established or found in the contract or enactment under which they are claimed, either by express words or by implication so strong as to lead irresistibly to the conclusion that exemption was intended.—10 Cyc. Law and Pro. 200 and notes. There is nothing in our act expressly conferring the exemption.

The appellant, conceding that to be so, insists that it is implied, for it says when the state granted the privilege of doing business in this state for a specified price, and did not expressly reserve the right to increase it, to add to the agreed consideration is beyond its power. In support of this contention the main reliance is upon *Gordon et al. v. Appeal Tax Court,* 3 How. 133, and other cases which have followed and approved it. That case has been so often criticised and disapproved by the supreme court of the United States itself that it can no longer be considered as authority for the particular contention which appellant here makes. Two subsequent cases in the supreme court of the United States uphold the validity of a tax imposed by the statute there attacked which is practically the same as that we are now considering. In

*Memphis Gas-Light Co. v. Shelby County,* 109 U. S. 398, a claim of exemption was made. The provision of the charter of the gas company on which its counsel mainly relied as showing a contract exempting it from taxation gave to the company the privilege of erecting, establishing and constructing gas works and manufacturing and vending gas in the city of Nashville for the term of fifty years at prices therein prescribed. The particular point urged was that the subsequent statute of the state which assessed a license tax of $250 a year against the gas company was void because it violated the contract found in its charter, and the point pressed there as here was that to permit the state to tax the gas company by a license tax for the privilege granted by its charter is to destroy that privilege; but the court, speaking by Mr. Justice Miller, thus disposed of that argument:

"But the answer is that the company took their charter subject to the same right of taxation in the state that applies to all other privileges and to all other property. If they wished or intended to have an exemption of any kind from taxation or felt that it was necessary to the profitable working of their business they should have required a provision to that effect in their charter."

And quoting from *Erie Ry. Co. v. Pennsylvania,* 21 Wall. 492, the court declared: "The language in which the surrender [of the right of taxation] is made must be clear and unmistakable." In our statute, as in the Memphis Gas Company case, there is no express language which attempts to exempt appellant from taxation, nor is there even the remotest implication of such exemption. In *New Orleans City etc. Co. v. New Orleans,* 143 U. S. 192, the same doctrine was announced, and *Gordon v. Appeal Tax Court, supra,* commented upon and explained. See

also *Erie Ry. Co. v. Commonwealth,* 66 Pa. St. 84.

In *U. P. Ry. Co. v. De Busk,* 12 Colo. 294, 307, our own court, in referring to the claim there made that a state statute impaired the obligation of the contract which was included in a corporate charter, quotes approvingly the well considered case of *Rodemacher v. Ry. Co.,* 41 Iowa 297, in which it was declared that: "There is no implied contract between a state and a corporation that there shall be no change in the laws existing at the time of the incorporation which shall render the use of a franchise more burdensome or less lucrative." The corporation takes "its charter subject to the general laws, and of course subject to such changes as shall be rightfully made in such laws." This applies to tax laws as well as to others. That the right of exemption must be clearly shown, in cases like the one in hand, has often been decided.—*Wells v. Savannah,* 181 U. S. 531; *Delaware Railway Tax,* 18 Wall. 206; 2 Cook on Corporations (5th ed.) § 572b; *Att'y General v. Bay State Mining Co.,* 99 Mass. 148, 152; 4 Thompson on Corporations, §§ 5571, 5572; Judson on Taxation, § 41; *Adams Express Co. v. Ohio State Auditor,* 166 U. S. 185; *Lumber Co. v. Ward,* 30 W. Va. 43, 48; *Standard etc. Cable Co. v. Att'y General,* 46 N. J. E. 270.

Our conclusion is that the payment of the filing fee was not intended as a tax in a lump sum for the privilege granted to a corporation of exercising its charter powers, but merely the purchase price or bonus for the privilege of existing here as a corporation. But if it should be considered as a tax for the privilege of doing business in the state, this would not, in the absence of a clear exemption from further or additional burden—which was not granted it—prevent the legislature from imposing an additional tax upon its business. No provision of the state or

federal constitution would be violated by such subsequent levy of an occupation tax.

In *Kiowa County v. Dunn*, 21 Colo. 185, it was said that the property or business of a nonresident cannot be taxed in a different manner or at a different rate than that of a resident. A business or occupation tax was not involved in that case. But it is clear that in a license or business tax upon corporations the state may discriminate against a foreign and in favor of a domestic corporation, though it may not between a resident and nonresident natural person. This is declared in the leading case of *Paul v. Virginia*, 8 Wall. 168, 181, and the cases following that authority. In *Pembina Mining Co. v. Pennsylvania*, 125 U. S. 181, 188, the supreme court of the United States, in considering the claim that in imposing license or franchise taxes the foreign corporations must be treated the same as domestic ones, said: "The power of the state to discriminate between her own domestic corporations and those of other states desirous of transacting business within her jurisdiction was clearly established," subject only to such limitations as may be found in the fundamental law of the Union.—*Copper Co. v. Scherr*, 50 W. Va. 533; 13 Am. & Eng. Ency. Law (2d ed.) 844 et seq., 860.

Nor is the objection that foreign corporations the par value of whose shares of stock is less than one dollar per share are required to pay a less tax than those whose shares of stock are of a greater value good; for it is within the power of the general assembly, in imposing taxes of this kind, to make reasonable classifications for the purposes of taxation. In what particular, if at all, the classifications of this section are unreasonable, we are not advised.

6. Appellant is engaged in the business of mining, smelting and refining ores, and marketing the refined product, and the ores which it smelts in Colo-

rado it obtains not only in this state but from other states of the Union and from British Columbia and the Republic of Mexico, and of the aggregate business which it transacts about twenty per cent. is done and about twenty per cent. of its aggregate capital is employed and a like amount of its property is situate within this state. The bullion from the ores which it brings into and from the ores which it both mines and treats in this state are sent to another state for refining, and from the refinery sent elsewhere to be sold or coined into money. For these reasons appellant contends that it is engaged in foreign and interstate commerce; hence the tax here levied is laid upon that commerce, and therefore cannot be sustained.

We do not perceive the force of the argument. The tax is not levied upon any article that is imported into or exported from this state, nor is any instrument of interstate or foreign commerce taxed nor is any burden placed upon that commerce in the sense in which that term is used in the federal constitution. If there is any burden at all, it is only incidental, and such as results from all legitimate taxation.—*Waters-Pierce Oil Co. v. Texas,* 177 U. S. 28; Judson on Taxation, § 158; *Ashby v. Ryan,* 153 U. S. 436; *Postal Tel. Co. v. Charlestown,* 135 U. S. 692.

The fact that only a portion of its capital is employed and only a relatively small part of its property situate in Colorado does not relieve it from the payment of a tax of this nature. This has been expressly ruled in *Horn Silver Mining Co. v. New York,* 143 U. S. 305. The particular objection that it is unfair and unjust and oppressive to the corporation not to take into consideration the fact that the larger portion of its capital and its property are situate without this state was referred to in that case, and

it was there said that such an argument should be addressed to the legislature, but it was not a matter with which the courts could interfere.

7.   The late case of *People of the State of N. Y. ex rel. The Met. Street Ry. Co. v. State Board of Tax Commissioners,* 199 U. S. 1, decided by the supreme court of the United States after oral argument of the case at bar, answers all the substantial objections which the appellant has made against the validity of this tax. The court there held that the principal objection to the tax made in that case, which was the same as that here, viz, that when the state grants a privilege on condition of the payment of a lump or of an annual sum the contract implies that the public shall exact no larger amount for that privilege, and that thereafter to impose a tax upon it is simply increasing the price which the grantee is called upon to pay for the privilege—finds no justification in principle or authority. See also the same case reported in 174 N. Y. 417, 446.

We are satisfied that this corporation license tax is on the business of foreign corporations which are established and doing business in this state, and as such is not subject to any of the constitutional objections interposed by appellant. The judgment below which sustained the tax should therefore be affirmed, and it is so ordered.          *Affirmed.*

Decision by the court *en banc.*