### BALTIC MINING COMPANY *vs.* COMMONWEALTH.

Suffolk.     December 1, 2, 1910. — January 4, 1911.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Constitutional Law*, Interstate commerce.     *Corporation*, Foreign: taxation.     *Tax. Statute*, Construction.     *Words*, "Foreign corporations."

A corporation, which was organized under the laws of Michigan for the purpose of mining, producing and selling copper and which operates in Michigan a mine and plant for the mining, producing, smelting and refining of copper and sells its product exclusively through another corporation organized in New Jersey for delivery to persons residing in Massachusetts and the other States and in foreign countries, not more than five per cent of the sales being consummated in Massachusetts, and which maintains in this Commonwealth a usual place of business consisting of an office in Boston for the use of its president and treasurer and for the general financial management and direction of its affairs, for meetings of its board of directors and for the transfer of its stock, is not so engaged in interstate commerce as to preclude this Commonwealth from levying upon it an excise tax and providing that the collection of such tax may be enforced by restraining the further prosecution of the business of the corporation in this Commonwealth.     *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, followed ; and *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, and *Pullman Co.* v. *Kansas*, 216 U. S. 56, distinguished.

It is not to be inferred that the Legislature intended that St. 1909, c. 490, Part III. §§ 39, 56, imposing an excise tax upon the foreign corporations described in St. 1903, c. 437, § 58, should go beyond the constitutional authority of the Commonwealth and levy a tax upon a foreign corporation having a usual place of busi-

---

* It appeared in evidence that the witness's husband had died before the suit was brought.

ness within this Commonwealth and conducting here as its principal function some kind of interstate commerce.

St. 1909, c. 490, Part III. §§ 39, 56, imposing an excise tax upon the foreign corporations described in St. 1903, c. 437, § 58, is inapplicable to a foreign corporation, for the taxation of which there is no special provision in our statutes and which is engaged in conducting some kind of interstate commerce for hire as its principal function and at the same time is engaged in intrastate business so closely connected with the interstate commerce that it could not be given up without serious detriment to the interstate commerce.

PETITION, filed on August 18, 1910, under the provisions of St. 1909, c. 490, Part III. § 70, to recover the amount of an excise tax assessed upon and paid by the petitioner, a foreign corporation.

The case was heard by *Rugg*, J., upon an agreed statement of facts, which was in substance as follows:

The petitioner is a foreign corporation with an authorized capital stock of $2,500,000, established under the laws of Michigan for the purpose of mining, producing and selling copper. Its mine and plant are situated in Michigan, where it is actually engaged in the business of mining and producing copper at its mine. No copper is sold directly by the petitioner itself. Its copper, after being mined, produced, smelted and refined in Michigan, is marketed and sold exclusively by a selling agency, the United Metals Selling Company, a New Jersey corporation. The copper is sold by the United Metals Selling Company for delivery to purchasers and consumers residing in Massachusetts and other States and foreign countries, delivery being effected by transportation from the smelter in Michigan directly to the purchaser in Massachusetts or elsewhere. Not more than five per cent of the sales are consummated in Massachusetts, the larger part of them being consummated in New York. The sales for delivery in and throughout the several States of the United States and in foreign countries are made in New York.

The petitioner several years ago was admitted to do business in this Commonwealth, pursuant to the provisions of St. 1903, c. 437, §§ 58 and 60, and since its admission has continued to do business within the Commonwealth and has complied with the requirements of the corporation law. It maintains, and has for several years maintained, a usual place of business within this Commonwealth, consisting of an office in the city of Boston

for the use of its president and treasurer for meetings of its board of directors and for the transfer of its stock, and for the general financial management and direction of the company's affairs.

On June 16, 1910, the petitioner complied with the provisions of St. 1909, c. 490, by paying to the Commonwealth an excise tax of one-fiftieth of one per cent of the par value of its authorized capital stock, as stated in its annual certificate of condition filed under the provisions of the same statute. The tax amounted to $500, which sum, with interest, it now seeks to recover.

The petitioner contended that the statute under which the tax was assessed and paid is unconstitutional, because it constitutes an unlawful regulation of interstate commerce, denies the petitioner an equal protection of the laws, and deprives it of its property without due process of law by imposing a tax upon property beyond the jurisdiction of the Commonwealth; and that, therefore, the tax was illegally assessed, imposed and exacted.

The single justice ordered the petition dismissed, and at the request of the petitioner reported the case for determination by the full court.

*C. A. Snow,* (*J. H. Knight* with him,) for the petitioner.

*D. Malone,* Attorney General, & *A. Marshall,* Assistant Attorney General, for the Commonwealth.

KNOWLTON, C. J.    This is a petition in equity, brought under the St. 1909, c. 490, Part III. § 70, for an abatement of an excise tax of $500 paid by the petitioner under § 56 of this chapter. The petitioner's contention is that the statute under which the tax was imposed is in violation of the Constitution of the United States.

The question presented is the same that was decided by this court, after full consideration and the citation of many authorities, in *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, when it was held that the statute was constitutional. Since this decision the cases of *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, and *Pullman Co.* v. *Kansas,* 216 U. S. 56, have been decided by the Supreme Court of the United States, in which it was held that a statute of Kansas imposing a tax

upon foreign corporations was unconstitutional. The petitioner contends that these cases require us to overrule our former decision. In the first of the two cases the decision was by five of the nine justices, the other four dissenting. In the decision of the second some of the justices did not participate, but those who took part were divided in opinion as in the first case. The question before us is whether the law laid down by the majority of the Supreme Court of the United States shows that the excise tax in the present case was unlawfully imposed.

When we considered the statute in the former case we held that it was inapplicable to corporations that maintain a place of business within the Commonwealth only for interstate commerce, and the opinion recognized the fact that no corporation or individual could be prevented from engaging in interstate commerce within the Commonwealth, by ordering that the injunction against the defendant, forbidding the prosecution of its business so long as it disobeyed the law, should except so much of its business as was a part of interstate commerce. The statute was construed as contemplating only this kind of an injunction.

It becomes necessary to consider the substance of the law established by the two decisions of the Supreme Court, in its application. to a case like the present. In each of the cases three opinions were written, one by Mr. Justice Harlan and one by Mr. Justice White, these two concurring in the judgment of the court, and one by Mr. Justice Holmes, dissenting. We do not understand that the majority of the court intended to change the law laid down in former decisions; but the difference of opinion among the justices seems to have arisen chiefly from their different views of the two cases then before the court, as to the effect of the proper application to them of `established rules of law.

We understand that the majority agree in the following views : A State may impose any terms it chooses as a condition of permitting a foreign corporation to do business in it, so long as it does not deprive the corporation of any rights secured to it by the Constitution of the United States. Subject to this limitation of its power, a State may arbitrarily prevent any foreign corporation from doing business within it. To every person and corporation, the right of engaging in interstate

commerce in every State, subject only to regulation of the business by Congress, is secured by the Constitution of the United States. States can pass no laws for the direct regulation of interstate commerce, although under the police power they may legislate in the public interest in any matter of local concern upon which there is no congressional legislation, even though the State's action affects interstate commerce indirectly and incidentally. The courts will look through the form of legislation to ascertain its true meaning and effect. In the two cases before the court, in which the statute purported to require a fee only in reference to the privilege of engaging in local business within the State, the question was whether the enforcement of the statute would directly interfere with interstate commerce and impose a burden upon it, so that, in substance and effect, the statute was different from the purport of the form of its language.

We understand that the court regarded the functions of each of the corporations as such that, practically, it could not give up its business within the State, for the prosecution of which the fee was exacted, without a very great injury to its interstate business, because the two classes of business were so connected that it was very difficult if not impracticable to separate them, and that therefore the State could not arbitrarily deprive these two corporations of the privilege of doing a local business without inflicting great wrong upon them by diminishing or destroying the interstate business that each of them had a right to do. As against each of these two corporations, carrying on the business for which they were respectively incorporated, the State had not an arbitrary right to impose such a burden on the local business as practically would compel it to abandon its interstate business. Looking then to the question whether the fee charged for the privilege of doing the local business was lawful as a reasonable tax or demand for the benefit conferred, the court held that, as against corporations like these, the mode of determining it showed it to be unreasonable, and therefore unwarrantable.

The corporation before us in the present case is of a very different kind, and the legislation of this Commonwealth differs much from that of Kansas. No such question as that considered in *Western Union Telegraph Co.* v. *Kansas, ubi supra,* could arise

under our statutes in reference to the taxation of a telegraph company or a railroad company. Upon such companies an excise tax is imposed, determined by taking a part of their capital stock proportioned to the length of their lines in this Commonwealth, as compared with the length of all their lines. St. 1909, c. 490, Part III. §§ 40, 41, 43, 52, 72.

The taxation in question in this case is only that upon foreign corporations. §§ 54, 56. The term "foreign corporations" means those established under laws other than those of this Commonwealth, for purposes for which domestic corporations may be organized under the provisions of St. 1903, c. 437, § 7. St. 1903, c. 437, § 56. These are corporations formed for any lawful purpose which is not excluded by the provisions of § 1 of this chapter, with certain named exceptions. Those excluded under § 1 are banks, savings banks, co-operative banks, trust companies, surety or indemnity companies, safe deposit companies, insurance companies, railroad or street railway companies, telegraph or telephone companies, gas or electric light and heat or power companies, canal, aqueduct or water companies, cemetery or crematory companies, and all corporations which now have or may hereafter have the right to take or condemn land, or to exercise franchises in public ways, granted by the Commonwealth or by any county, city or town. The foreign corporations which are subject to taxation under St. 1909, c. 490, Part III. § 56, in the manner in which the petitioner was taxed, are those having a usual place of business in this Commonwealth, or engaged permanently or temporarily, and with or without a usual place of business therein, in the construction, erection, alteration or repair of a building, bridge, railroad, railway or structure of any kind, except those for the taxation of which special provision is made. St. 1903, c. 437, §§ 58, 60. Express provision is made for the taxation of express companies, foreign and domestic. See St. 1909, c. 490, Part III. §§ 72, 76.

It is not the policy of our law, in dealing with corporations, foreign or domestic, whose purpose is to furnish an agency for the transaction of commercial business by making transfers for pay, through transportation or the transmission of intelligence from state to state, as well as in a single State, to impose a tax estimated upon the basis of earnings or property in other States.

Our statutes relative to the taxation of railroad, telegraph and express companies illustrate our methods.

The plaintiff corporation is not of the same class as a telegraph company or the Pullman Company. It is a mining company. Its business is mining copper and preparing it for the market. It is a producer of a valuable commodity. If it is not in a strict sense a manufacturing corporation, it is like one. It has no more connection with interstate commerce than other manufacturing corporations that prepare property for sale in the market. The sale of its product in different States and the transportation of it from one State to another are mere incidents of the business of producing it for sale. Seemingly this corporation derives little if any profit from that part of its business which is strictly interstate commerce. The profit from transportation goes to the carriers. The difference between the price of copper sold and delivered at a place remote from the mine and that of copper sold at the mine is presumably the sum paid for carrying it. It is agreed that about five per cent of the plaintiff's sales of copper have been made in Massachusetts, for delivery here. If a profit is derived from the business of negotiating sales and making deliveries in States remote from the mine, it seems that this goes, for the most part or altogether, to the United Metals Selling Company, a corporation having its offices in New York City, to which the plaintiff granted an exclusive agency for the sale of its copper. It would be difficult, if not impossible, for the plaintiff to show that any considerable part of its income is derived from interstate commerce.

The plaintiff's regular place of business in Boston is not used in interstate commerce, as are passenger stations and freight houses of railroad companies. It is used as a home in Massachusetts for this foreign corporation, for the financial management and direction of the company's affairs, where the president and treasurer have their offices, and the meetings of the board of directors are held. It could be given up or removed to any other State without affecting in any way the plaintiff's income from interstate commerce. If there were an arbitrary exclusion of the plaintiff from the Commonwealth, except so far as it conducted the business of interstate commerce within the State, it would put no burden upon its commerce, either in Massachusetts

or elsewhere. Whatever view be taken of this imposition of an excise tax, it is difficult to see how it has any direct relation to the petitioner's income from interstate commerce.

The required payment is strictly of an excise tax, and not of a tax upon property. The fact that it is estimated upon the par value of the capital stock, with a maximum limit of $2,000 as the highest tax that can be imposed upon the largest corporation, does not make it a tax upon property. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148. *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493, 495. *Pratt* v. *Street Commissioners*, 139 Mass. 559, 562. *Provident Institution* v. *Massachusetts*, 6 Wall. 611. *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632. *Society for Savings* v. *Coite*, 6 Wall. 594, 608. This excise tax is for the commodity or privilege of having an establishment for business in Massachusetts, with the protection of our laws and the financial and other advantages of a situation here. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 240. Such a place of business has no necessary connection with the earning of profits in interstate commerce.

In *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 33, Mr. Justice Harlan said: "It is true that in many cases the general rule has been laid down that a State may, if it chooses to do so, exclude foreign corporations from its limits, or impose such terms and conditions on their doing business in the State as in its judgment may be consistent with the interests of the people. But those were cases in which the particular foreign corporation before the court was engaged in ordinary business and not directly or regularly in interstate or foreign commerce." This is such a corporation.

In *Osborne* v. *Florida*, 164 U. S. 650, the court held that the imposition of a tax upon a corporation engaged in both intrastate and interstate commerce was legal, as the company could " conduct its interstate business without paying the slightest heed to the act, because it does not apply to or in any degree affect the company in regard to that portion of its business which it has the right to conduct without regulation from the State." The same condition exists here. If the plaintiff should choose to give up the advantages of a place of business in Boston, it might disregard the statute, and abandon its office or take the

consequences of an injunction, without affecting in the slightest degree the profits derived from its interstate business, if it receives any. The opinion in *Pullman Co.* v. *Adams*, 189 U. S. 420, 422, contains this language : " The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce." This is true in the light of the latest decisions, when the case is like the present, where the renunciation of a local business would not affect its interstate business. See also *Allen* v. *Pullman's Palace Car Co.* 191 U. S. 171.

The present case seems to be covered by the decision in *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305. This plaintiff is just such a corporation as the present petitioner. It is called a manufacturing corporation. The argument in its behalf presented the question whether the statute was unconstitutional as an interference with interstate commerce. It seems to have been contended, if we may judge from the opinion, that the facts ought " to be considered as showing only transactions of interstate commerce." But the statute was held constitutional, notwithstanding that its relation to the interstate commerce conducted by that company was substantially the same as appears in the present case.

The plaintiff in *Pembina Consolidated Silver Mining & Milling Co.* v. *Pennsylvania*, 125 U. S. 181, seems to have been engaged in the same business, having the same relations to interstate commerce, as the present petitioner. The ground set up against the statute in the answer was that it was in violation of the commerce clause of the constitution. Mr. Justice Field said in the opinion of the court, at page 184, " It is not perceived in what way the statute impinges upon the commercial clause of the Federal Constitution. It imposes no prohibition upon the transportation into Pennsylvania of the products of the corporation, or upon their sale in the Commonwealth. It only exacts a license tax from the corporation when it has an office in the Commonwealth for the use of its officers, stockholders, agents, or employees." We have the following language, quoted by Mr. Justice Miller in *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, 550, from the opinion of the court, written by Mr. Justice Strong, in *Railroad Co.* v. *Peniston*, 18 Wall. 5, 30 : " It cannot be that a State tax which remotely affects the effi-

cient exercise of a Federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the States all power to tax persons or property." Without referring to the many other cases in the Supreme Court of the United States that tend to support the contention of the Commonwealth, we hold that the recent decisions of that court, relied on by the petitioner, do not indicate that the statute before us is unconstitutional.

In our former adjudication upon it we expressed the opinion that it was inapplicable to cases where a foreign corporation had its place of business here only for use in interstate commerce. It is not to be inferred that the Legislature intended the statute to go beyond the constitutional authority of the Commonwealth. We have already referred to the policy of our law in reference to such corporations as railroads, telegraph companies, electric railways, express companies, and the like. In view of these legislative expressions of policy and in view also of the late decisions relied on by the petitioner, we hold that the statute before us would be inapplicable to a foreign corporation for the taxation of which there is no special provision in our statutes, if it should be engaged in the work of conducting some kind of interstate commerce for hire as its principal function, and at the same time should be engaged in intrastate business so closely connected with the interstate commerce that it could not be given up without serious detriment to the interstate commerce, so that its condition in this respect would be like that of the Western Union Telegraph Company.

*Petition dismissed.*