# April Term, 1916.

[No. 7534.]

## COLORADO & SOUTHERN RAILWAY COMPANY V. THE PEOPLE.

1. CORPORATIONS—*License Tax—Interstate Commerce.* The license tax prescribed by sec. 64 of the Revenue Act of 1902 (Laws 1902 c. 2) is 'not an interference with, or a regulation of, interstate commerce. A railway company operating lines of a railway both in Colorado and other states cannot evade payment of the tax upon suggestion of such interference. (233.)

The inconvenience of the opposite rule enlarged upon.

2. CONSTITUTIONAL LAW—*Equal Protection of the Law.* A domestic corporation will not be heard to claim exemption from the tax imposed by sec. 64 of the Revenue Act of 1902, upon the plea that inasmuch as the provision imposing the tax upon foreign corporations is not enforceable (*American Co. v. Colorado,* 204 U. S. 103) it is denied the equal protection of the law. (236, 237.)

*Error to Denver District Court.* Hon. H. C. RIDDLE, Judge.

Mr. E. E. WHITTED, for plaintiff in error.

Mr. BENJAMIN GRIFFITH, Attorney General, Hon. ARCHIBALD A. LEE, Deputy Attorney General, Mr. FRED FARRAR, Attorney General, Mr. FRANCIS E. BOUCK, Deputy Attorney General, for The People.

HILL, J., delivered the opinion of the court.

The plaintiff in error (a domestic corporation) intervened in a suit by the People against Cowie (a former Secretary of State), and the surety on his official bond, brought to recover a sum of money collected by him from various domestic corporations as their annual state corporation license tax, authorized by section 64 of the Revenue Act of 1902. A motion to dismiss its petition of intervention was overruled. A demurrer to the petition was thereafter sustained. The petitioner declining to plead over, its inter-

vention action was dismissed.   Judgment was thereafter entered against Cowie and his surety in favor of the state, which became final against them.   The petitioner in intervention, only, brings the case here.   It alleges the trial court erred in sustaining the demurrer to its petition of intervention, and in ordering that the former Secretary of State turn over to the People $960 of the moneys sued for, which had been paid to him by the petitioner, under protest, and under an arrangement that it should be held by him until the Supreme Court of Colorado might determine whether said section 64 under which it was being exacted, was, as to petitioner, a valid act, etc.

The People's motion to dismiss the writ of error on the ground that the company had no right to intervene, was heretofore overruled.   See *Colorado & Southern Ry. Co. v. The People*, 53 Colo. 571, 128 Pac. 886.   For the reasons stated in the above opinion, we shall assume that the intervenor has plead facts sufficient to show its right to intervene in this action, if entitled to recover at all, but we do not approve of this method of procedure by state officers, and our conclusion makes it unnecessary to decide whether the payment was to Cowie as Secretary of State, or deposited with him as an individual, and whether it would act as a payment at all, to the state, so as to defeat the penalties for non-payment in case the statute was upheld. Section 64 referred to reads:

"In addition to all other fees and taxes now provided for by law, every corporation which has heretofore obtained, or which shall hereafter obtain, a charter or certificate of incorporation from this state, and having a capital stock of $25,000.00 or over, shall pay, on or before the first day of May of each year, or at the time of obtaining such charter or certificate of incorporation, and on or before the first day of May of each year thereafter, as the case may be, an annual state corporation license tax to the auditor of the State of Colorado, as follows:

Two cents upon each one thousand dollars of its capital stock."

Section 65 following, enacted at the same time, lays on foreign corporations, which then had or thereafter obtained the right to transact business in Colorado, a similar tax of four cents upon each thousand dollars of capital stock with certain exceptions where it was to be at the rate of two and one-half cents per thousand shares, etc. By a later act in 1903, it was provided that after the second Tuesday in January, 1905, these payments were to be made to the Secretary of State instead of to the State Auditor.

The petitioner alleges that section 64, when applied to it, violates section 8, paragraph 3, of the Constitution of the United States, in that it amounts to an interference with, and a regulation of interstate commerce, for the reason that, although a domestic railway corporation, it is engaged in interstate, as well as intrastate, commerce, and for such purposes owns certain lines of railroad in Colorado, and three other states. We cannot agree that these facts justify the conclusion that the imposition of this excise tax or fee amounts to any interference with, or regulation of, its interstate commerce. It is not a property tax, but an excise tax or fee. The statute, in substance, thus defines it, to-wit, "an annual state corporation license tax." It was not intended as a property tax. It is annually levied upon all domestic corporations with a capital stock of $25,000 or more for the privilege of thus continuing as such, and for this purpose they are thus classified. It is not based upon the amount of their property in this state or elsewhere, nor the amount or kind of their business transacted in or out of the state or in foreign countries, nor upon the value of their capital stock. It is not limited to the stock already issued, subscribed for, paid-up, or otherwise, but is intended to cover the entire capital stock of the corporation as permitted by the state in its certifi-

cate of incorporation. It makes no distinction between railroads or other corporations or where their business is being conducted, but simply says to all, if you wish to be a creature of this state, and after being created, desire to thus continue with all the rights and privileges appertaining thereto, in addition to your other taxes you must pay to the state, your creator, as long as it allows you to continue as its creature with these privileges this "annual state corporation license tax." For these reasons it is held not to be a tax based on the property of the corporation or a property tax. *Baltic Mining Co. v. Massachusetts*, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127; *Flint v. Stone Tracy Co.*, 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; *Provident Institution v. Massachusetts*, 6 Wall. 611, 18 L. Ed. 907; *American S. & R. Co. v. People*, 34 Colo. 240, 82 Pac. 531; *Parsons v. People*, 32 Colo. 221, 76 Pac. 666; *White Dental Mfg. Co. v Commonwealth*, 212 Mass. 35, 98 N. E. 1056, Ann. Cas. 1913C, 805; *Baltic Mining Co. v. Commonwealth*, 207 Mass. 381, 93 N. E. 831; *Northern Pac. Ry. Co. v. Gifford*, 25 Idaho, 196, 136 Pac. 1131.

This section does not manifest a purpose to interfere with interstate commerce, and we are of opinion that it does not in any manner do so. To concede (with no further showing) because the petitioner is a railway company and engaged in interstate business, as well as intrastate, that this tax places a burden or regulation upon its interstate business, would be to concede that any tax, upon any of its property, does likewise, and for that reason no tax of any kind could be levied upon any of it. It would be to concede that the business of any corporation which buys and ships goods from other states into this state, as well as sells and ships goods from this state into other states, would be interfered with; also that our domestic mining corporations doing business in South America or elsewhere, which have

occasion to ship from here there, and from there here, would be thus, interfered with; likewise, the ordinary retail merchant corporation with its store in the City of Julesburg, within a mile from the Nebraska line, and which takes orders for, sells and delivers its merchandise into that state. The same rule would apply to every mail-order house in the state which happened to be a domestic corporation. A good answer to this question is that used by the Supreme Court of the United States in the State Railroad Tax cases, 92 U. S. 575; it reads "it was hard to believe that the proposition was seriously made." It is not everything that affects interstate commerce that amounts to a regulation of it within the meaning of the constitution. *Delaware Railroad Tax,* 18 Wall. 206, 21 L. Ed. 888; *Railroad Company v. Peniston,* 18 Wall. 5, 21 L. Ed. 787; *Phila. & Reading R. Co. v. Pennsylvania,* 15 Wall. 284, 21 L. Ed. 164; *Baltic Mining Co. v. Commonwealth,* 207 Mass. 381, 93 N. E. 831; *Postal Telegraph-Cable Co. v. Adams,* 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311; *Erie Railroad v. Pennsylvania,* 158 U. S. 431, 15 Sup. Ct. 896, 39 L. Ed. 1043; *Pennsylvania Railroad Co. v. Knight,* 192 U. S. 21, 24 Sup. Ct. 202, 48 L. Ed. 325.

There must be a limit and line drawn somewhere concerning the question of interference with interstate commerce by way of taxation, if government by states is to continue. As said by Mr. Justice Strong in *Railroad Co. v. Peniston,* 18 Wall. 5, at page 31, 21 L. Ed. 787:

"The States are, and they must ever be, co-existent with the National Government. Neither may destroy the other. Hence the Federal Constitution must receive a practical construction. Its limitations and its implied prohibitions mut not be extended so far as to destroy the necessary powers of the States, or prevent their efficient exercise."

This class of taxation ought not to be defeated by the mere allegation that the railway corporation is engaged

in interstate commerce, and for such purpose owns property in other states. It will be observed that its petition does not state how much property it has in each state, or the value thereof, or the amount of its interstate business; neither does it allege the value of its capital stock or set forth anything by which a comparison can be made between the par value of its stock, and the property owned by it, or any fact which discloses how and why this small payment, when compared to the amount of its capital stock, interferes with its interstate commerce other than the mere allegation that, among other things, it is engaged in such business. In such circumstances we think that this payment by a domestic corporation is freer from objection than the one under consideration in *Baltic Mining Co. v. Massachusetts*, 231 U. S. 68, 58 L. Ed. 127, 34 Sup. Ct. 15, where the validity of a Massachusetts statute was involved, which measured the license or excise tax to be collected annually from foreign corporations by a straight percentage of one-fiftieth of one per cent of the par value of its authorized stock, with but one limitation, namely, that the amount should not in any one year exceed $2,000. In that case the foreign corporation showed that the greater portion of its property, and business transacted, was outside the state, but that it had offices and some property in that state and was doing business there; that it was also engaged in interstate business, which was far in excess of the business transacted by it in that state. The statute was upheld. In this case the petitioner is a domestic corporation, its excise tax is fixed practically by the same method provided in the Massachusetts act, but is much less, and it has failed to allege or offer to furnish any of the information disclosed in the Massachusetts cases, or present any fact why it should be distinguished from them, even were it a foreign corporation. The Supreme Court of Idaho has twice held that their statute, which is somewhat similar to ours, is

not open to this objection. *Northern Pac. Ry. Co. v. Gifford,* 25 Idaho 196, 136 Pac. 1131; *Northern Pac. Ry. Co. v. Gifford,* 27 Idaho 667, 151 Pac. 909.

It is claimed because the Supreme Court of the United States declared section 65, *supra,* unenforcible against certain foreign corporations (*American Smelting Co. v. Colorado,* 204 U. S. 103, 51 L. Ed. 393, 27 Sup. Ct. 198, 9 Ann. Cas. 978), which ruling applies as well to certain foreign railroad companies doing business in this state, that section 64, *supra,* denies to the petitioner the equal protection of the law, in that it imposes upon it the payment of this tax, and by reason of the above decision its foreign competitor who owns similar property in this state and is conducting a similar business, is relieved from paying it or any similar tax. We must not overlook that the petitioner is a domestic corporation, and that this is not a property tax, but an excise tax or fee, upon all such having a capital stock in excess of a certain amount; that other domestic corporations are required to pay it is conceded, but the petitioner's position is because foreign railroad corporations doing business in this state are not required to pay it to our state, it is discriminated against in this respect in favor of the foreign corporation. It is not claimed that for the privilege of its existence and the right to continue a foreign corporation, in addition to its property tax, does not pay the state which created it an equal amount or more than we exact from ours for the rights of its existence and the same privileges which we award to our domestic corporations, but the complaint is that it does not pay it here. Counsel overlook the important fact that it was not created here, and being a foreign corporation, could, in certain instances, be discriminated against here in favor of our domestic corporation. Section 3, article XV of our Constitution reserves to the legislature the power to alter, revoke and annul charters of corporations created by it.

By this section domestic corporations are placed in a class by themselves. It is likewise elementary that the general assembly has the power to classify the subjects with which its legislation deals. In *Consumers' League v. Colorado, etc., Co.*, 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914A, 1158, this court held if the classification is not wholly arbitrary and unreasonable, and if the statute is uniform in its operation upon all the members of the class to which it is made applicable, that no one is denied the equal protection of the law. This opinion upheld an act which placed railroads in two classes for certain purposes. The act under consideration, for certain purposes, places all corporations having a capital stock in excess of a certain amount in two classes, namely, domestic and foreign, those with a less capital in another class. When everything concerning them all is taken into consideration, we are of the opinion that this was a fair, just and reasonable classification for the purposes intended. The human mind as yet has failed to present any method by which the burdens of taxation can be imposed accurately upon all alike. That a state can classify corporations for the purpose of a tax of this kind, we take it is not questioned. That it can also impose different burdens of this class upon domestic and foreign corporations, we take it must likewise be conceded. That was not the reason for the reversal of this court in *American Smelting Co. v. Colorado*, 204 U. S. 103, 51 L. Ed. 393, 27 Sup. Ct. 198, 9 Ann. Cas. 978, but to the contrary, in commenting upon the subject, at page 113, that court said:

"The power to impose different liabilities was with the State at the outset. It could make them greater or less than in case of a domestic corporation, or it could make them the same. Having the general power to do as it pleased, when it enacted that the foreign corporation upon coming in the State should be subjected to all the liabilities of domestic corporations, it amounted to the same thing

as if the statute had said the foreign corporation should be subjected to the same liabilities."

The rule announced in the first part of the above quotation had, in substance, been declared by this court in *American S. & R. Co. v. The People,* 34 Colo. 240, and while this case was reversed for another reason, that portion involving this question appears to have been approved, and being the deliberate utterance of this court with the approval of the higher court, we see no reason why we should reconsider that question. This section was heretofore upheld by this court in *Ohio-Colorado Co. v. Elder,* 47 Colo. 63.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*

Mr. Justice WHITE dissenting.

Mr. Justice TELLER not participating.

Decided February 7, A. D. 1916. Rehearing denied May 1, A. D. 1916.