## S. S. WHITE DENTAL MANUFACTURING COMPANY *vs.* COMMONWEALTH.

Suffolk.   January 18, 19, 1912. — May 24, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Tax,* Excise.   *Constitutional Law,* Interstate commerce, Due process of law, Equal protection of the laws.   *Corporation,* Foreign.

The excise tax imposed by St. 1909, c. 490, Part III, § 56, upon certain foreign business corporations having usual places of business in this Commonwealth, to the amount of one-fiftieth of one per cent of their authorized capital stock not to exceed in any year $2,000, is in no way a tax on property but is in effect the requirement of a license fee for the privilege of doing a local business in this Commonwealth, and is not an unconstitutional interference with interstate commerce as applied to a corporation which at its place of business in this Commonwealth sells goods at wholesale and retail, one half of such sales being made to persons residing in Massachusetts and the other half for delivery to purchasers outside of Massachusetts.

St. 1909, c. 490, Part III, § 56, imposing an excise tax upon certain foreign business corporations having usual places of business in this Commonwealth, is not unconstitutional under the Fourteenth Amendment of the Constitution of the United States as taking property without due process of law or as denying to any person within the jurisdiction of the Commonwealth the equal protection of the laws.

PETITION, filed in the Supreme Judicial Court on November 4, 1911, under St. 1909, c. 490, Part III, § 70, by a corporation organized under the laws of the State of Pennsylvania to recover the amount of an excise tax assessed upon the petitioner by the Tax Commissioner of the Commonwealth under Part III, § 56 of the same statute and paid by the petitioner.

The case was submitted to *Braley,* J., upon an agreed statement of facts, containing the facts which are stated in the opinion.   The petitioner asked the justice to make certain rulings of law to the effect that the statute, so far as concerned the petitioner, was unconstitutional upon the three grounds which are stated in the opinion.   The justice refused the requests for rulings and ordered that the petition be dismissed, and at the request of the petitioner reported the case for determination by this court.   If the rulings of the justice were correct, a decree was to be entered dismissing

the petition; otherwise, a decree was to be entered for the petitioner in the sum of $200 with interest from the date of payment of such excise tax and costs.

*C. A. Snow*, (*W. P. Everts* with him,) for the petitioner.

*A. Marshall*, Assistant Attorney General, for the Commonwealth.

RUGG, C. J.   The petitioner is a foreign corporation organized under the laws of Pennsylvania, where are its principal offices. Its business is manufacturing artificial teeth and dental instruments and supplies and buying and selling such products.   It does not manufacture in Massachusetts, but it has maintained for ten years in Boston a salesroom, offices, store and stock rooms, where it keeps a stock of goods sufficient for carrying on its business.   At this place fifty-four persons are employed, twelve of whom are salesmen travelling in New England and the maritime provinces. It sells goods at wholesale and retail over its counters.   About fifty per cent of its sales at the Boston place of business are to persons residing in Massachusetts.   Sales of nearly an equal quantity are made there for delivery to purchasers outside of Massachusetts. Goods so sold are not transported by the petitioner, but by common carriers, the petitioner receiving a bill of lading, in which it is named as consignor and the purchaser as consignee.   The bill of lading is mailed to the consignee, who, upon its surrender to the carrier, receives the goods.   Other orders are received at the Boston office, which are filled by deliveries from factories of the petitioner in other States.   Approximately ten per cent of the total sales of the petitioner are made in Massachusetts, one half of this percentage being to residents of Massachusetts, and one half to purchasers residing outside of Massachusetts.   The petitioner's authorized and issued capital stock is $1,000,000.   Its stock on hand, fixtures and bank deposits in Boston average $100,000.   For the year 1911 the petitioner paid to the Commonwealth an excise under St. 1909, c. 490, Part III, § 56, which was measured by one-fiftieth of one per cent of the petitioner's authorized capital stock, and amounted to $200.   This petition is brought to recover the excise so paid.

The several grounds of this claim by the petitioner relate to the constitutionality of the excise on foreign corporations for doing business in the Commonwealth provided by St. 1909, c. 490,

Part III, § 56, and may be grouped as follows: 1. That it imposes an unlawful burden on interstate commerce. 2. That it takes property without due process of law. 3. That it violates the requirement for equal protection of the law.

The constitutionality of this statute was before this court first in *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239. There it was held as not intended to apply to foreign corporations having places of business in this Commonwealth devoted exclusively to interstate business, and, as so interpreted, "plainly constitutional." In *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. 381, its constitutionality was discussed again. In behalf of the petitioner there it was urged that *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, and *Pullman Co.* v. *Kansas,* 216 U. S. 56, required an overruling of *Attorney General* v. *Electric Storage Battery Co.,* but it was held in an exhaustive opinion of the court, speaking through Chief Justice Knowlton, that our statute was not governed by these decisions, and was constitutional notwithstanding them. We are asked to review and overrule these two decisions of our own, by reason of further recent decisions of the United States Supreme Court. The material part of the statute is that a foreign corporation is required to pay an annual excise of "one-fiftieth of one per cent of the par value of its authorized capital stock as stated in its annual certificate of condition; but the amount of such excise tax shall not in any one year exceed the sum of two thousand dollars."

1. It is urged, first, that this is not really an excise, but a property tax upon all the property of the petitioner as represented by its capital stock, and hence a direct burden upon interstate commerce.

Before examining the federal cases relied upon by the petitioner, a reference to the nature of our system of exacting revenue from corporations will be helpful, for the purpose of determining whether the tax is what the Legislature called it, namely, an excise, or whether it is a property tax, as is now contended. Under our Constitution, which has been the organic law of this Commonwealth since 1780, taxes are of two kinds, property taxes and excises. The first of these must be both proportional and reasonable. The latter need not be proportional, but only reasonable. This distinction has been marked often in legislation, and defined

somewhat in judicial decision.    It was said in 1815 by Chief Justice Parker, in *Portland Bank* v. *Apthorp*, 12 Mass. 252, 255: "Those taxes [that is, those upon property] must be proportional upon all the inhabitants of, and persons resident and estates lying within, the Commonwealth.    The exercise of this power requires an estimate or valuation of all the property in the Commonwealth; and then an assessment upon each individual, according to his proportion of that property.    To select any individual or company, or any specific article of property, and assess them by themselves, would be a violation of this provision of the Constitution.    But there are other sources of emolument and profit, not strictly called property, but which are rather to be considered as the means of acquiring property, from which a reasonable revenue may be exacted by the Legislature. . . . The exercise of this power is called the imposing or levying of duties and excises."

The broad power of levying excises has arisen from the grant to the Legislature in the Constitution to impose them upon [among other subjects] any "commodities" within the Commonwealth. This word is of comprehensive signification, and includes the privilege of transacting business as a corporation, whether domestic or foreign, within the Commonwealth.    *Commonwealth* v. *Lancaster Savings Bank*, 123 Mass. 493, 495.

It has been said many times, through the years since the adoption of the Constitution, that any property tax in order to be valid under the Constitution must be proportional, and any such tax assessed upon certain property, at a rate different from that upon other property, is disproportionate.    *Oliver* v. *Washington Mills*, 11 Allen, 268, 275.    *Cheshire* v. *County Commissioners*, 118 Mass. 386, 389.    *Northampton* v. *County Commissioners*, 145 Mass. 108, 109.    *Opinion of the Justices*, 195 Mass. 607.    *Opinion of the Justices*, 208 Mass. 616.    The policy of the Commonwealth relative to the taxation of corporations, both domestic and foreign, has been founded upon this distinction between a property tax and an excise.    It was established in 1862 as to savings banks, and in 1864 as to business corporations.    The constitutionality of these acts was attacked.    The excise upon the commodity of exercising the business of a savings bank was based upon the amount of its deposits, and upon that of being a business corporation on the

market value of its capital stock after deducting its real estate and machinery, if any, taxed locally.

These excises were sustained as valid, on the ground that they were not property taxes. *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428. *Commonwealth* v. *Provident Institution for Savings*, 12 Allen, 312. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. In the last two cases, the constitutionality of the statutes was assailed on the further ground that each corporation had a substantial part of its assets invested in bonds of the United States which were exempt from taxation under the Constitution of the United States. It was urged with great earnestness that an excise was unconstitutional which was based, in one case, upon the amount of deposits, a large part of which was invested in United States bonds, and in the other upon market value of shares deriving a material and ascertainable part of their value from the ownership of such bonds. On this ground each case was taken to the Supreme Court of the United States. *Provident Institution* v. *Massachusetts*, 6 Wall. 611. *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632. In the opinion in the latter case, it was said at pages 639, 640: "Separated from the peculiar provision of the State Constitution, and the long practice under the original decision [*Portland Bank* v. *Apthorp*, 12 Mass. 252] the present decision of the State court upon the subject might well be criticised as founded in unsubstantial distinctions, but when weighed as an exposition of that peculiar clause and in view of the long practice of the State, commencing long before the prior decision was made, it is not possible to withhold from the conclusion a full and unqualified concurrence. . . . Property taxation and excise taxation, as authorized in the Constitution of the State, are perfectly distinct, and the two systems are easily distinguished from each other, if we adopt the definition of the word 'commodities' as uniformly given by the courts of the State, and as universally understood by the taxpayers and assessors." *Society for Savings* v. *Coite*, 6 Wall. 594. The Legislature has applied the principle of an excise to telegraph and telephone companies, whether foreign or domestic, operating lines partly within and partly without the State, and these, though differing in the mode of ascertainment from the one now under consideration, have been upheld. *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530. *Massa-*

*chusetts* v. *Western Union Telegraph Co.* 141 U. S. 40.    Similar statutes have been enacted respecting excises upon corporations operating railroads, street railways, electric railroads, and express companies.    St. 1909, c. 490, Part III, §§ 40, 41, 43, 52, 72, 76.    It has been applied to foreign insurance companies. *Oliver* v. *Liverpool & London Life & Fire Ins. Co.* 100 Mass. 531.    *Connecticut Mutual Life Ins. Co.* v. *Commonwealth,* 133 Mass. 161.

The principle of imposing an excise upon the privilege of doing business within this State by a foreign mining, quarrying or oil corporation, based upon a percentage of the par value of its capital stock, was established by St. 1865, c. 283, § 8.    This was held a valid excise under both the State and Federal Constitutions in *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148, where it was said, at page 153: "But it is not merely the franchise of incorporation that is the basis of the tax; nor is it the capital, regarded merely as property. . . . A corporation which seeks, by its agents, to establish a domicil of business in a state other than that of its creation, must take that domicil, as individuals are always understood to do, subject to the responsibilities and burdens imposed by the laws which it finds in force there."

Thus it appears that for nearly one hundred years this court has sustained as constitutional excises upon corporations which could not have been upheld as property taxes under the terms of our Constitution.    The conclusion is irresistible that the Legislature intended the financial burden now under discussion to be an excise. It is expressly declared by the terms of the statute to be an excise. The declared purpose of the act is to be accepted as true, unless incompatible with its meaning and effect. *Hazen* v. *Essex Co.* 12 Cush. 475, 477. *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 145.    It was said in *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. at 388, that "The required payment is strictly of an excise tax, and not of a tax upon property. . . . This excise tax is for the commodity or privilege of having an establishment for business in Massachusetts, with the protection of our laws and the financial and other advantages of a situation here." *Pratt* v. *Street Commissioners,* 139 Mass. 559, 561, 562. *Commonwealth* v. *Barnstable Savings Bank,* 126 Mass. 526. *Suffolk Savings Bank for Seamen, petitioner,* 151 Mass. 103, 106. *Attorney General* v. *Massachusetts Pipe Line Gas*

Co. 179 Mass. 15, 19. *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207.

It is apparent from this review that for many years the established policy of this Commonwealth has exacted revenue from all domestic corporations, chiefly by a system of excises, and not by property taxes. While, as has been pointed out, limited classes of foreign corporations had been taxed in the same way, those engaged in ordinary business and manufacturing had not been required until 1903 to pay any excise, and had been subject only to a limited property tax upon such real estate and goods, wares and merchandise as were within the State. Under this condition of the law, foreign corporations engaged in ordinary trade enjoyed distinct immunities over domestic corporations. *Boston Investment Co.* v. *Boston,* 158 Mass. 461. When the Legislature dealt with the subject of foreign corporations in the light of Massachusetts history and experience, it levied an excise, as it had for many years upon all domestic corporations. By St. 1903, c. 437, § 75, foreign corporations organized for purposes for which domestic corporations may be established under that statute were required to pay annually an excise as a condition for doing business within the Commonwealth. This statute subjected to its provisions all foreign corporations having a usual place of business in the Commonwealth or engaged without a usual place of business in the construction, alteration, erection or repair of a building, railroad, bridge or structure of any kind, save as other special provision was made. Speaking generally, such corporations included those engaged in ordinary mercantile or manufacturing business, but excluded transportation and public service corporations of all kinds, and banking, trust, surety and indemnity companies. It has been decided expressly so often as to be plain beyond the possibility of dispute, that there is a clear distinction between a property tax on the assets or capital of a corporation and an excise or license for the privilege of carrying on business. For example, it was said in *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632, 640, "Property taxation and excise taxation . . . are perfectly distinct."

This tax then must be regarded in the light of our taxation history and system as intended by the Legislature and interpreted by the courts as a pure excise tax. Upon no other ground could it be sustained under our own Constitution. In no sense can it be

regarded under our jurisprudence as a property tax. It is said, however, that the law is unconstitutional as an interference with interstate commerce, under the decisions of *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, *Pullman Co.* v. *Kansas*, 216 U. S. 56, *Ludwig* v. *Western Union Telegraph Co.* 216 U. S. 146, and *Western Union Telegraph Co.* v. *Andrews*, 216 U. S. 165. To these should be added *Atchison, Topeka & Santa Fe Railway* v. *O'Connor*, 223 U. S. 280, and *Oklahoma* v. *Wells, Fargo & Co.* 223 U. S. 298, decided since the argument. The principle established by these decisions is that the court, looking through the form of a statute to its substance, will ascertain whether in truth the impost is a direct tax upon interstate commerce, whatever may be the guise under which it is levied, and applying this rule, statutes under consideration in each of these cases requiring of all foreign corporations payment of a certain percentage of their entire capital stock were found to be a direct burden upon that portion of the corporate capital engaged in interstate commerce, and hence void. There are at least two important, and as we think vital, distinctions between these cases and the one at bar. The first is that these cases all relate to corporations directly engaged for hire in transportation of intelligence or commerce or persons between the States; and their capital invested in this business was of such a permanent and fixed nature that the local business could not be given up without impairing their capacity to transact efficiently their interstate business. Their main business was interstate commerce of a *quasi* public character. Our statutes now deal, and have always dealt with corporations of this character on a basis entirely different from that established respecting ordinary business corporations. See St. 1909, c. 490, Part III, §§ 40, 41, 43, 52, 72 and 76, and St. 1912, c. 457. Cases like these federal decisions could not arise under our scheme of taxation. The second distinction between our statute and those under consideration in the federal cases last cited, is that the maximum fee allowed by our statute is $2,000, which is the fee exacted of corporations having a capital of $10,000,000 or more. This provision demonstrates that it is not a property tax, but only an excise so limited that it cannot reach beyond a reasonable license fee. These differences appear on the face of our statute, when compared with those under review in the federal decisions. Its substance appears

to be that which it is denominated, namely, an excise. But light is thrown upon its real effect by the interpretation placed upon it by this court. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, held that our statute did not relate to foreign corporations doing exclusively an interstate commerce, while *Baltic Mining Co.* v. *Commonwealth,* 207 Mass. 381, 390, decided that it did not apply "to a foreign corporation for the taxation of which there is no special provision in our statutes, if it should be engaged in the work of conducting some kind of interstate commerce for hire as its principal function, and at the same time should be engaged in intrastate business so closely connected with the interstate commerce that it could not be given up without serious detriment to the interstate commerce, so that its condition in this respect would be like that of the Western Union Telegraph Company."

It follows that our statute applies to corporations engaged in the transaction of ordinary business within the State. It comes precisely within the statement of law in *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, made by the court speaking through Mr. Justice Harlan, at page 33: "It is true that in many cases the general rule has been laid down that a State may, if it chooses to do so, exclude foreign corporations from its limits, or impose such terms and conditions on their doing business in the State as in its judgment may be consistent with the interests of the people. But those were cases in which the particular foreign corporation before the court was engaged in ordinary business and not directly or regularly in interstate or foreign commerce." This principle is supported by a great number of cases, many of which are cited in other parts of this opinion. It is established in its application to the case at bar especially by *Osborne* v. *Florida,* 164 U. S. 650, 655, *Horn Silver Mining Co.* v. *New York,* 143 U. S. 305, *Pembina Consolidated Silver Mining & Milling Co.* v. *Pennsylvania,* 125 U. S. 181, *Cooper Manuf. Co.* v. *Ferguson,* 113 U. S. 727, *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 343. None of these cases are overruled or impaired by the opinion in *Western Union Telegraph Co.* v. *Kansas,* and some of them are affirmed by it.

The effect of our statute is to establish a maximum excise of $2,000 as a license for doing business in this State. It is a condition exacted annually as a prerequisite to conducting a local business here. It is the manner in which a fee is determined and

levied for the gift of a function from the State, which it is at full liberty to deny or bestow. If the sovereignty confers the gift, it may fix its own conditions. This is in itself a reasonable sum. It does not exceed the amount which may be charged for an annual license to sell intoxicating liquors. A flat rate of $2,000 might have been charged all foreign business corporations without violation of any right guaranteed by the Constitution of the United States. The present statute graduates the fee down from that maximum. That in this regard it imposes a diminished burden upon the smaller corporation is not fatal. The gauge of this reduction is not the value of the property of the corporation, nor the actual value of its shares, but the par value of its capital stock. This fact, in conjunction with the comparatively small maximum established, is another indication that the excise cannot be a property tax. Reference to the par value of the capital stock in such connection "is made, not as descriptive of the subject to be assessed." *Provident Institution* v. *Massachusetts*, 6 Wall. 611, 627. The circumstance that the amount of the excise is not "unduly great, having reference to the real value" of property engaged in business (*United States Express Co.* v. *Minnesota*, 223 U. S. 335, 348) or that it "is not at all disproportioned to such local business and, therefore, not to be regarded as a mere device to reach or burden the interstate commerce of the company" (*Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 42) have been treated as significant factors in determining whether the statute was within the power of the State.

It seems plain from the agreed facts that there is in a legal sense no inextricable connection between the interstate and intrastate business of the petitioner. They are not so interwoven that they cannot be separated reasonably. The petitioner alleges that parts of its property, assets and place of business "in no way concern" its domestic business or "have no material reference" to it. The agreed facts as interpreted by the petitioner show a differentiation in amount. Indeed, this appears to be a necessary incident to ordinary business. Otherwise, every kind of business, when both interstate and domestic are conducted, merely by reason of commingling, might be regarded as inseparable. Unless this is so, any discussion of excise taxes on foreign corporations would be idle, for they could all be avoided by conducting an interstate and

domestic business at the same place. Simply because the interstate and intrastate business may be conducted together more profitably or conveniently does not render them inextricably interwoven, nor the one necessarily incident to the other. Therefore, it is not necessary to define the principle which would govern under such circumstances.

The petitioner comes within the description contained in *Pullman Co.* v. *Adams,* 189 U. S. 420, 422. "The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce," and as was said in *Allen* v. *Pullman's Palace Car Co.* 191 U. S. 171, 182, it may "abandon the business if it saw fit," or in *Kehrer* v. *Stewart,* 197 U. S. 60, 67, "if the tax be imposed in terms upon the domestic commerce, . . . the corporation is free to abandon the business taxed if it sees fit." In *Galveston, Harrisburg & San Antonio Railway* v. *Texas,* 210 U. S. 217, at 227, it was said referring to the distinction between the right of the State to tax property [and by implication of its right to levy an excise or license] and in its incapacity to tax interstate business "The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. . . . A practical line can be drawn by taking the whole scheme of taxation into account." Our corporation tax system, in the light of its history, bears this test. It is a scheme of taxation which is founded wholly upon the proposition as its corner stone that it is not a property but an excise tax. This is its only support, and it falls utterly if this fails. As was said by Chief Justice Holmes, in *Tremont & Suffolk Mills* v. *Lowell,* 178 Mass. 469, at 471, "The franchise tax is not a tax on the property of the corporation, and its validity sometimes has depended upon this consideration." This system of taxation has grown up under the shelter of two express decisions in its support by the Supreme Court of the United States. *Provident Institution* v. *Massachusetts,* 6 Wall. 611, and *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632. These have both been cited with approval in *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 164, 165, 167. It cannot be thought that there was any intent in the cases upon which the petitioner relies to overrule these cases or to destroy a system of taxation which so far as its federal aspects are concerned has been built upon faith in them. See the language of Holmes, C. J., in *Smith* v. *Mayor & Aldermen of Worcester,* 182 Mass. 232, 233. As a

practical matter, there is no attempt to burden interstate commerce. It is only by an attempted extension of the principle of *Western Union Telegraph Co.* v. *Kansas* and the cases following it beyond its tensile strength that it even appears to reach the case at bar.

The result is that the petitioner may carry on its interstate business alone, if it chooses, without paying the excise, but if it prefers to exercise the commodity of doing a local business in our State, availing itself thus of our business and financial advantages and competing for domestic business under the protection of our laws, it must do so in accordance with those laws. Treating the statute as to substance and operation, it does not bear directly upon commerce among the States, nor amount to a regulation of it. Without repeating the reasoning of *Baltic Mining Co.* v. *Commonwealth,* we adhere to it, and find nothing at variance with its conclusions in the recent decisions of the United States Supreme Court.

We have not discussed the point much relied upon by the Commonwealth that a close analysis of the facts shows that a large percentage of the petitioner's business conducted in Boston is intrastate, and only a very small fraction interstate, for we reach our decision assuming that the proportions asserted by the petitioner in this regard are correct.

2. The grounds already discussed and the conclusions reached dispose of the contention that the statute takes property of the petitioner without due process of law. If the money payment required is an excise exacted solely for the privilege of conducting a domestic business within the State, a privilege which the petitioner is free to embrace or renounce, as we hold it to be, it follows that the petitioner, when voluntarily it took such steps as subjected it to an excise within the constitutional power of the State to exact, has not been deprived of its property except by the law of the land. See *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114.

3. It is urged that the excise law is invalid because contrary to the clause of the Fourteenth Amendment to the Federal Constitution inhibiting any State from denying "to any person within its jurisdiction the equal protection of the laws." Reliance in this respect is placed upon *Southern Railway* v. *Greene,* 216 U. S. 400, and *Louisville & Nashville Railroad* v. *Gaston,* 216 U. S. 418. These cases seem clearly distinguishable from the case at bar. They

each relate to a railroad corporation which, as said in the opinion in *Southern Railway* v. *Greene,* at 414, came into the State with its "permission . . . and under the sanction of its laws, and has established therein a business of a permanent character, requiring for its prosecution a large amount of fixed and permanent property, which the foreign corporation has acquired under the permission and sanction of the laws of the State. . . . It must always be borne in mind that property put into railroad transportation is put there permanently. It cannot be withdrawn at the pleasure of the investors. . . . The railroad must stay, and, as a permanent investment, its value to its owners may not be destroyed." The ground of the judgment in the cases relied upon is the feature of acquisition of property in its nature permanent, irremovable and inadaptable to other purposes, upon the faith of an existing law of the State. This principle does not affect or modify that other principle established by a long line of decisions that a State has an absolute and unqualified right to utterly prohibit or prescribe and change at will the terms upon which a foreign corporation, strictly commercial in its nature, may be permitted to do business within its borders. *Bank of Augusta* v. *Earle,* 13 Pet. 519. *Ashley* v. *Ryan,* 153 U. S. 436, 445. *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28. *Snyder* v. *Bettman,* 190 U. S. 249. *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 516. This point is quite disconnected with that of interstate commerce, and hence decisions on statutes touching insurance companies are pertinent. *Paul* v. *Virginia,* 8 Wall. 168. *Hooper* v. *California,* 155 U. S. 648, 652. *Philadelphia Fire Association* v. *New York,* 119 U. S. 110. *Home Ins. Co.* v. *New York,* 134 U. S. 594. *Security Mutual Life Ins. Co.* v. *Prewitt,* 202 U. S. 246, 249, and other cases there cited. The law upon this subject, as stated by Mr. Justice Peckham, in the case last cited, at 257, is: "Thus it is admitted that a State has power to prevent a company from coming into its domain, and that it has power to take away its right to remain after having been permitted once to enter, and that right may be exercised from good or bad motives." There is nothing in this record to indicate a large and permanent investment by the petitioner in property adapted to its peculiar needs and not equally available at an equivalent or reasonable price for other valuable uses. The fact that it has leased a store has no tendency by itself alone in this direction. Moreover, there is

nothing in the agreed facts or in the allegations of the petition to indicate that the operation of our system of tax laws as a whole is adverse to the foreign corporation as compared with others in like situation conducting business as individuals, partnerships or domestic corporations. An inspection of the law itself is far from showing any legislative hostility to foreign corporations as such, or the imposition of onerous burdens upon them, or that the excise law in its broader aspects and in its practical working is in any respect unjust or unequal.

It is a further significant circumstance that our statutes have never placed foreign and domestic corporations upon literally the same basis as to excises. An examination of the history of our statute law in this regard will show that for many years the foreign business corporation stood upon a ground distinctly more favorable than did domestic competitors. *Boston Investment Co.* v. *Boston,* 158 Mass. 461. *New York Biscuit Co.* v. *Cambridge,* 161 Mass. 326. *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385, 388, 389. It surely cannot be the law that all efforts at equalization of the burdens of government are impossible and unlawful, for the reason that those who have heretofore enjoyed an undue advantage may be deprived of their preference. Looking at the two reports of special committees which were before the Legislature at the time of the enactment of St. 1903, c. 437, and St. 1909, c. 490, it is open to doubt whether our laws may not still discriminate in favor of the foreign business corporation against similar domestic corporations. The report of the Joint Special Committee on Taxation of 1907, which formed the basis of St. 1909, c. 490, in referring to the excise tax on foreign corporations provided by St. 1903, c. 437, § 75, said: "It seems clear . . . that the amount received from this excise tax is entirely inadequate to pay for the privileges enjoyed. . . . The fact that domestic corporations frequently find it to their financial advantage to give up their Massachusetts charters and become incorporated under the laws of some State other than Massachusetts inevitably leads to the conclusion that there is at present a discrimination in the matter of taxation against our own corporations and in favor of foreign enterprise." What this committee deemed a conservative recommendation is not, however, embodied in the existing law, but one in some respects more favorable to the foreign cor-

poration.  For these reasons there are ample distinctions between *Southern Railway* v. *Greene* and *Louisville & Nashville Railroad* v. *Gaston* and the case at bar.  License or privilege fees are not taxation, and under the cases above cited may be limited to foreign corporations for the privilege of conducting intrastate business.  As was said by Mr. Justice Shiras, in *New York* v. *Roberts,* 171 U. S. 658, at 661, 662: "It must be regarded as finally settled by frequent decisions of this court that, subject to certain limitations as respects interstate and foreign commerce, a State may impose such conditions upon permitting a foreign corporation to do business within its limits as it may judge expedient; and that it may make the grant or privilege dependent upon the payment of a specific license tax."  *Coulter* v. *Louisville & Nashville Railroad,* 196 U. S. 599.  *Pacific Express Co.* v. *Seibert,* 142 U. S. 339.  *St. Mary's Petroleum Co.* v. *West Virginia,* 203 U. S. 183, 191.  *Pullman Co.* v. *Kansas,* 216 U. S. 56, 66, 67.

The single fact that a foreign corporation has become established within the State is not prohibitive against exercise of the power of the State as to the conditions under which the business may be continued where there is no permanent investment of property not adapted to general commercial uses like those of a railroad or telegraph company.  This undoubted right of the State was treated as so clear as to need barely more than a statement in *National Council United American Mechanics* v. *State Council of Virginia,* 203 U. S. 151, 163.  *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322.  See *Diamond Glue Co.* v. *United States Glue Co.* 187 U. S. 611.

*Petition dismissed with costs.*