INTERNATIONAL PAPER COMPANY *vs.* COMMONWEALTH.

Suffolk. March 29, 30, 1916. — September 13, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Tax,* Excise imposed on foreign corporations. *Corporation,* Foreign: taxation. *Constitutional Law. Evidence,* Matters of common knowledge, Presumptions and burden of proof.

St. 1914, c. 724, providing that every foreign corporation subject to the excise tax of one per cent of the par value of its authorized capital stock, not exceeding $2,000 in any year, imposed by St. 1909, c. 490, Part III, § 56, shall pay in each year, "in addition to the tax imposed by said section fifty-six, an excise tax to be assessed by the tax commissioner of one one hundredth of one per cent of the par value of its authorized capital stock in excess of ten million dollars as stated in its annual certificate of condition," is constitutional and valid.

It here was *said* to be manifest that a State is not debarred from imposing an excise upon the granted privilege of being a corporation because the corporation is engaged in interstate as well as intrastate commerce.

It also was *said* that it seemed to be indubitable that the use by a State of a percentage on the authorized capital stock of a foreign corporation as the measure of an excise or license fee imposed for permission to such foreign corporation to

do an intrastate or local business within its borders is not a decisive element in determining the validity of the imposition of the tax.

The excise for doing business in this Commonwealth lawfully may be imposed under St. 1909, c. 490, Part III, § 56, as amended by St. 1914, c. 724, upon a corporation organized in another State, which carries on the manufacture of paper in this Commonwealth and has a mill within the Commonwealth and a sales office within the Commonwealth where it makes sales of its goods manufactured at its domestic mill to purchasers domiciled in Massachusetts, to whom the goods are delivered by intrastate commerce, although the charter of such corporation authorizes it "to maintain, conduct and manage in the State of New York and elsewhere the business of manufacturing, producing, selling and dealing in any and all kinds of paper," and it maintains and operates twenty-three paper mills or plants connected with the manufacture of paper, situated chiefly in New York, Vermont, New Hampshire and Maine, and although about eighty-six per cent of the sales and contracts negotiated and made through its Boston office or for execution in Massachusetts require or contemplate the transportation and delivery of goods from a mill situated outside Massachusetts to purchasers in Massachusetts, or from its Massachusetts mill to purchasers outside Massachusetts, and only about fourteen per cent of such sales and contracts relate to goods to be delivered to a Massachusetts purchaser from its Massachusetts mill.

The statute does not deny to such a corporation equal protection of the laws under the Fourteenth Amendment of the Constitution of the United States.

It is matter of common knowledge that there are in this Commonwealth many mills for the manufacture of paper, and, in the absence of evidence to the contrary, it will be assumed that such mills are salable in the market at fair prices.

The fact that a foreign corporation doing business in this Commonwealth acquired its real estate in Massachusetts while St. 1903, c. 437, § 75, was in force and before the enactment of St. 1907, c. 578, (now St. 1909, c. 490, Part III, § 56, as amended by St. 1914, c. 724,) does not show that such corporation has been denied the equal protection of the laws by being made subject to the excise imposed by the later statutes.

If the statute imposing an excise on foreign corporations doing business in Massachusetts discriminates in favor of the large and against the small corporations, one of the class of the large corporations cannot be heard to complain of this discrimination by which it is not aggrieved.

The objection, that the excise imposed on foreign corporations doing business here by St. 1909, c. 490, Part III, § 56, as amended by St. 1914, c. 724, is unconstitutional because it is unreasonable in amount, cannot be raised by a foreign corporation which is conducting here a purely local business that is distinct and separable from the interstate business conducted by it, and which is not a public service corporation directly engaged in interstate commerce, so that the corporation has the option of giving up the local commerce and business if it does not care to prosecute them under the excise imposed.

Assuming that it were open to the petitioner in the present case to contend that the excise imposed on it as a foreign corporation was invalid because unreasonable in amount, and assuming also that the point must be decided on the present record which did not disclose sufficient facts to determine whether the excise was excessive, it appearing that the petitioner had extraordinarily large financial resources and that the amount of the excise in question was $5,500, it was *said,* that the court "know of no principle of law which requires the conclusion that a license fee of that amount is unduly or unreasonably great, to a corporation of

such large capital as the petitioner, for the privilege of admission to the local markets of this Commonwealth for the transaction of an intrastate business in the manufacture and sale of an undisclosed quantity of paper of undisclosed value and out of which an undisclosed profit is realized."

PETITION, filed in the Supreme Judicial Court on July 20, 1915, under St. 1909, c. 490, Part III, § 70, and St. 1914, c. 724, by the International Paper Company, a corporation organized under the laws of the State of New York, to recover the amount of a tax or excise paid by the petitioner as a foreign corporation and alleged to have been imposed unlawfully.

The case was heard by *Loring*, J., upon an agreed statement of facts, of which the material parts are stated in the opinion. The petitioner asked the single justice to make the following rulings:

"1. As applied to the petitioner, the foreign corporation excise tax of Massachusetts, assessed and levied on it under St. 1909, c. 490, Part III, § 56, and St. 1914, c. 724, is unconstitutional and void, because it conflicts with the 'commerce' clause contained in § 8, art. 1, of the Constitution of the United States.

"2. As applied to the petitioner, the said excise tax is unconstitutional and void, because it is in contravention of the 'due process of law' clause contained in the Fourteenth Amendment to the Constitution of the United States.

"3. As applied to the petitioner, the said excise tax is unconstitutional and void, because it conflicts with the 'equal protection of the laws' clause contained in the Fourteenth Amendment to the Constitution of the United States.

"4. As applied to the petitioner, the said excise tax is unconstitutional and void under the principles set forth in the Western Union and Pullman decisions (216 U. S. 1, 56), which apply to business corporations engaged in interstate commerce, and are not confined, in their application, to *quasi* public corporations.

"5. The principles of the Western Union decisions (216 U. S. 1, 56) apply wherever, as here, the same instrumentalities and the same agencies carry on in the same places interstate commerce and domestic business in conjunction with each other.

"In an excise, measured, as here and in the Kansas tax, by the entire authorized capital, it is totally unnecessary to show that the domestic business is 'inextricably interwoven' with the interstate commerce transacted by the same instrumentalities, or to prove

that the interstate and intrastate business cannot be separated, or that they are carried on in such close connection that the intrastate business cannot be abandoned without serious impairment of the interstate commerce. Such factors did not appear in the Kansas tax.

"It suffices to show, as here, that the two classes of business, interstate and domestic, are carried on, in conjunction, by the same agencies and at the same places. If so, a tax of this description necessarily burdens to a substantial degree the interstate business of the company, as was held in the Western Union case.

"The Baltic decision (231 U. S. 68) only applies to cases where the local business is carried on wholly apart from the interstate commerce.

"6. If the local or domestic business is fairly incident to interstate commerce transacted here, which constitutes the great bulk of the total business, the said tax, imposed for the privilege of carrying on such local business, is unconstitutional under the 'commerce' clause.

"7. As applied to the petitioner, the amount of said excise is 'unduly great,' having reference to the real value of the local business and the property used therein, and is so 'disproportioned' to the volume and profits of the local business and to the value of the privilege taxed that it should be regarded as a mere 'device' to reach or burden the interstate portion of the company's commerce, property, and profits, and, consequently, is unconstitutional.

"8. If, as here, the petitioner is engaged in this State in the work of conducting some kind of interstate commerce, as their principal function, and in connection therewith, and by the same instrumentalities, a small percentage of local business, a tax measured by the entire capital, both interstate and domestic, is unconstitutional because its necessary effect is to burden directly and substantially the interstate portion of the company's capital, business, and property, and is, consequently, based on an unlawful measure, as was decided in the case of the Kansas tax in precisely the same terms as the statute of 1909 here involved (216 U. S. 1, 56).

"9. As applied to the petitioner, the said tax is unconstitutional, because it conflicts with the 'equal protection of the laws' clause

of the Fourteenth Amendment, under the principles of *Southern Ry. Co.* v. *Greene,* 216 U. S. 400.

"The said tax is unconstitutional, as applied to a company like this which acquired a large amount of permanent and valuable property in this State prior to St. 1907, c. 578, now St. 1909, c. 490, Part III, § 56, imposing the said tax and doubling the amount of the tax, as existing under preceding legislation, St. 1903, c. 437, § 75, under which the company had entered this State and acquired such property, and repealing the right theretofore enjoyed by foreign corporations to deduct from their excises the amounts paid for local property taxes, whereas at the time of imposing the said tax of 1907 no similar changes in taxation were made with reference to domestic corporations of the same kind carrying on a precisely similar business.

"10. The said tax, under said act of 1909, is also unequal and unconstitutional, under the 'equal protection of the laws' clause, because it charges, without discrimination, the same rate for the local privilege, without regard to whether the company's local business amounts to one per cent of ninety-nine per cent of its total sales or commerce here transacted, and because, further, the provision for a maximum of $2,000 unfairly and unequally discriminates against the smaller corporations, the corporation with $10,000,000 capital paying precisely the same as that with $100,-000,000 capital, and paying nothing whatever on its capital in excess of $10,000,000.

"11. Although a tax otherwise lawful may, in some instances, be measured by capital or gross receipts, the Massachusetts excise uses an unlawful and unconstitutional measure, because, being measured by the entire capital stock, it necessarily affects directly and substantially that part of the capital employed in interstate commerce or outside of this State, as was held, as to the Kansas tax, in precisely the same terms as said statute of 1909 (216 U. S. 1, 56).

"12. St. 1909, c. 490, Part III, § 56, as amended by St. 1914, c. 724, as applied to the petitioner, is unconstitutional under the Massachusetts Constitution, because it exceeds the power of the Legislature to impose and levy 'reasonable' duties and excises, as limited by Part II, c. 1, § 1, art. 4 of the Constitution.

"The Massachusetts excise is wholly unreasonable.

"13. The petitioner, upon the agreed facts, is entitled to recover the tax paid by it."

The single justice refused to make any of these rulings and ordered that a decree be entered that the petition be dismissed. The petitioner alleged exceptions.

St. 1909, c. 490, Part III, § 56, is as follows: "Every foreign corporation shall, in each year, at the time of filing its annual certificate of condition, pay to the Treasurer and Receiver General, for the use of the Commonwealth, an excise tax to be assessed by the tax commissioner of one fiftieth of one per cent of the par value of its authorized capital stock as stated in its annual certificate of condition; but the amount of such excise tax shall not in any one year exceed the sum of two thousand dollars."

St. 1914, c. 724, § 1, is as follows: "Every foreign corporation subject to the tax imposed by section fifty-six of Part III of chapter four hundred and ninety of the acts of the year nineteen hundred and nine shall in each year, at the time of filing its annual certificate of condition, pay to the Treasurer and Receiver General for the use of the Commonwealth, in addition to the tax imposed by said section fifty-six, an excise tax to be assessed by the tax commissioner of one one hundredth of one per cent of the par value of its authorized capital stock in excess of ten million dollars as stated in its annual certificate of condition."

*C. A. Snow*, for the petitioner.

*W. H. Hitchcock*, Assistant Attorney General, for the Commonwealth.

*P. Ketchum*, by leave of court, filed a brief as *amicus curiae*.

RUGG, C. J.  This is a petition by a corporation organized under the laws of the State of New York to recover an excise tax paid by it, levied for the privilege of doing business in this Commonwealth, assessed to it under St. 1909, c. 490, Part III, § 56, and St. 1914, c. 724.  The material facts are that the authorized capital stock of the petitioner is $45,000,000, of which between $39,000,000 and $40,000,000 has been issued and is outstanding.  Its charter confers authority " to maintain, conduct and manage in the State of New York and elsewhere the business of manufacturing, producing, selling and dealing in any and all kinds of paper."  It maintains and operates twenty-three paper mills or plants connected with the manufacture of paper, situated chiefly in New York, Vermont,

New Hampshire and Maine.   At Montague in this Commonwealth it owns and operates a paper mill comprising real estate, water power, machinery and personal property, where is manufactured paper sold in Massachusetts and also in other States of this country.   The petitioner maintains a selling office at Boston, with bookkeeping and clerical force, where sales and contracts for sale of paper for delivery both within and without this State are made by two salesmen subject to approval by employees of the petitioner at its main office in New York.   About eighty-six per cent of the sales and contracts negotiated and made through its Boston office, or for execution in Massachusetts, require or contemplate the transportation and delivery of goods from a mill situated outside Massachusetts to purchasers in Massachusetts or from its Massachusetts mill to purchasers outside Massachusetts; and about fourteen per cent of such sales and contracts relate to goods to be delivered to a Massachusetts purchaser from its Massachusetts mill.   No stock of goods is kept on hand in Massachusetts from which sales are made deliverable, the contracts being largely on long terms for the entire supply of paper required for newspapers, but the petitioner aims to have on hand at its mills and in transit ample stock to supply the needs of its customers.

Every question presented upon this record would be settled contrary to the contentions of the petitioner by *Keystone Watch Case Co.* v. *Commonwealth*, 212 Mass. 50, *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, *Marconi Wireless Telegraph Co. of America* v. *Commonwealth*, 218 Mass. 558, and by *Baltic Mining Co.* v. *Commonwealth*, 207 Mass. 381, and *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35, both affirmed in 231 U. S. 68, except for the fact that a part of the excise tax here complained of was assessed under the provisions of St. 1914, c. 724, enacted since those decisions.

The constitutionality of that statute is assailed.   Its crucial section is printed on page 106.

The foreign corporation tax law heretofore considered, St. 1909, c. 490, Part III, § 56, has exacted from every foreign corporation doing a domestic business within the Commonwealth an excise tax of one fiftieth of one per cent on the par value of its authorized capital stock, the maximum amount in no event to exceed $2,000 in any year.   By the St. of 1914, c. 724 that maximum is removed

and an excise at a lower rate is imposed measured by the excess of authorized capital stock over $10,000,000.

The question is whether the removal of a maximum limitation of the excise and its measurement in part as to the corporations having an authorized capitalization in excess of $10,000,000 at a rate different from that applied to capitalization up to that sum destroy the validity of the excise.

The tax levied by said § 56 is strictly an excise and not a property tax, and does not violate any provision of the Constitution of Massachusetts or of the United States Constitution. That was decided by the decisions already cited. It was affirmed by the United States Supreme Court in 231 U. S. 68. Hence the general nature and purpose of our foreign corporation tax law is settled. It is not open to further discussion. That general nature and purpose does not appear to us to be changed by St. 1914, c. 724. The circumstance that by its terms the entire authorized capital is used for a measure of the excise is not fatal. That particular point as a federal question is foreclosed by binding decisions. It was said in *Pembina Consolidated Silver Mining & Milling Co.* v. *Pennsylvania*, 125 U. S. 181, at page 186, that the State "could make the grant of the privilege [of doing intrastate business by a foreign corporation] conditional upon the payment of a license tax, and fix the sum according to the amount of the authorized capital of the corporation." The same point was decided in *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305. The statute there attacked as violative of the Federal Constitution imposed an excise measured by a percentage on its capital stock with modifications dependent upon dividends or want of dividends. It there was said, at page 315, "Having the absolute power of excluding the foreign corporation the State may, of course, impose such conditions upon permitting the corporation to do business within its limits as it may judge expedient; and it may make the grant or privilege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital;" and again, at page 317, "There seems to be a hardship in estimating the amount of the tax upon the corporation, for doing business within the State, according to the amount of its business or capital without the State. That is a matter, however, resting entirely in the control of the State, and not a matter of federal law, and with

which, of course, this court can in no way interfere. . . . It is said that against nearly all other foreign corporations, except this one, the taxes upon their franchises have been computed upon the basis of the capital employed within the State; but as to that we can only repeat what was said in the Court of Appeals of the State, that, if this be true, the defendant may have reason to complain of unjust discrimination and may properly appeal for relief to the Legislature of the State, but that it is not within the power of the court to grant any relief however great the hardship upon it. The extent of the tax is a matter purely of State regulation, and any interference with it is beyond the jurisdiction of this court. The objection that it operates as a direct interference with interstate commerce we do not think tenable."

The words quoted from the two decisions of the United States Supreme Court last cited were not chance expressions used in the course of an argument by way of illustration, but were directed to the precise terms of statutes imposing an excise tax exacted as a condition to the doing of domestic business by a foreign corporation. *Cohens* v. *Virginia*, 6 Wheat. 264, at page 399. These expressions were used with deliberation in pronouncing important judgments, and formed essential links in the chain of reasoning by which conclusions were reached. In *Kansas City, Fort Scott & Memphis Railway* v. *Kansas*, 240 U. S. 227, this principle was re-affirmed. It was said at pages 232, 233, "The authority of the State to tax this privilege, or franchise, has always been recognized and it is well settled that a tax of this sort is not necessarily rendered invalid because it is measured by capital stock which in part may represent property not subject to the State's taxing power. Thus, in *Society for Savings* v. *Coite*, 6 Wall. 594, 606, 607, the power to levy the franchise tax was deemed to be 'wholly unaffected' by the fact that the corporation had invested in Federal securities; and in *Home Ins. Co.* v. *New York*, 134 U. S. 594, 599, 600, it was held that a tax upon the privilege of being a corporation was not rendered invalid because a portion of its capital (the tax being measured by dividends) was represented by United States' bonds. These cases were cited with distinct approval, and the rule they applied in distinguishing between the subject and the measure of the tax was recognized as an established one, in *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 165. It is also manifest that the

State is not debarred from imposing a tax upon the granted privilege of being a corporation, because the corporation is engaged in interstate as well as intrastate commerce. *Delaware Railroad Tax,* 18 Wall. 206, 231, 232. *State Railroad Tax Cases,* 92 U. S. 575, 603. *Philadelphia & Southern S. S. Co.* v. *Pennsylvania, supra* [122 U. S. 326]. *Ashley* v. *Ryan,* 153 U. S. 436. *Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549, 559, 560. And, agreeably to the principle above mentioned, it has never been, and cannot be, maintained that an annual tax upon this privilege is in itself, and in all cases, repugnant to the Federal power merely because it is measured by authorized or paid-up capital stock. The selected measure may appear to be simply a matter of convenience in computation and may furnish no basis whatever for the conclusion that the effort is made to reach subjects withdrawn from the taxing authority. We recently have had occasion (*Baltic Mining Co. v. Massachusetts, supra* [231 U. S. 68]), to emphasize the necessary caution that 'every case involving the validity of a tax must be decided upon its own facts;' and if the tax purports to be laid upon a subject within the taxing power of the State, it is not to be condemned by the application of any artificial rule but only where the conclusion is required that its necessary operation and effect is to make it a prohibited exaction." This principle is reiterated in effect in the latest authoritative decision of which we are aware touching this subject. In *Kansas City, Memphis & Birmingham Railroad* v. *Stiles,* 242 U. S. 111, the constitutionality of a statute was challenged, whereby an excise tax was levied on corporations measured by a percentage upon capital stock, property represented by which was situated in different States. It there was said, at pages 118, 119, "It is urged that this tax is void because it undertakes to tax property beyond the jurisdiction of the State, and imposes a direct burden upon interstate commerce. Objections of this character were so recently discussed, and the previous cases in this court considered, in *Kansas City, Fort Scott & Memphis Railway* v. *Kansas,* 240 U. S. 227, that it would be superfluous to undertake extended discussion of the subject now. In that case, after a full review of the previous decisions in this court, it was held that each case must depend upon its own circumstances, and that while the State could not tax property beyond its borders, it might measure a tax within its authority by capital stock which in part represented

property without the taxing power of the State. As to the objection based upon the due process clause of the Constitution, we think that principle controlling here. There is no attempt in this case to levy a property tax; a franchise tax within the authority of the State is in part measured by the capital stock representing property owned in other States."

The conclusion from these decisions seems indubitable that the use by a State of a percentage on the authorized capital stock of a foreign corporation as the measure of the excise tax or license fee imposed for permission to such foreign corporation to do an intrastate or local business within its borders is not a decisive element in determining the validity of such tax. There is nothing in *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, and the group of cases immediately following it in the same volume, and in *Atchison, Topeka & Santa Fe Railway* v. *O'Connor,* 223 U. S. 280, and *Oklahoma* v. *Wells, Fargo & Co.* 223 U. S. 298, which requires a different conclusion. Those decisions depend upon their facts, as do all other cases upon this branch of the law. They do not govern the case at bar. The words used in *Kansas City, Memphis & Birmingham Railroad* v. *Stiles,* 242 U. S. 111, at page 119, in distinguishing those cases, are equally applicable to the case at bar, namely, "The tax is not of the character condemned in *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, and kindred cases. In the latter case, a tax of large amount was imposed upon a foreign corporation engaged in interstate commerce for the privilege of doing local business within the State. Under the circumstances therein disclosed and the character of the business involved, this court held that the statute was in substance an attempt to tax the right to do interstate business, and to tax property beyond the confines of the State, and was therefore void. . . . So of the objection that the tax imposes a burden upon interstate commerce, the test of validity recognized in previous cases and repeated in *Kansas City, Fort Scott & Memphis Railway* v. *Kansas, supra,* is the nature and character of the tax imposed. The State may not regulate interstate commerce or impose burdens upon it; but it is authorized to levy a tax within its authority, measured by capital in part used in the conduct of such commerce, where the circumstances are such as to indicate no purpose or necessary effect in the tax imposed to burden commerce of that character."

The tax imposed by St. 1914, c. 724, is strictly an excise and not a property tax for the reasons stated at length in *Baltic Mining Co.* v. *Commonwealth*, 207 Mass. 381, and *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35, which need not now be repeated. They apply with as much force to the instant statute as to the original foreign corporation tax statute there considered. The petitioner in the case at bar is carrying on a local business. Intrinsically that is a large business in itself. The manufacture of paper at Montague is purely a business within this Commonwealth. That is not commerce, although the goods produced there may become the subject of commerce. The distinction between commerce and manufacture is sharp and well defined. A substantial part of the commerce which follows as a consequence of manufacture conducted at the mill located within the Commonwealth is intrastate, consisting of sales and deliveries of paper to residents of the Commonwealth for use here. The local manufacture of paper is disconnected with the interstate business of the petitioner except as an artificial relation has been established by the petitioner. They have no inherent connection one with the other. *United States* v. *E. C. Knight Co.* 156 U. S. 1. *Kidd* v. *Pearson*, 128 U. S. 1, 20, 21, 22. *Cornell* v. *Coyne*, 192 U. S. 418, 428, 429. *Hopkins* v. *United States*, 171 U. S. 578, 594. *Keystone Watch Case Co.* v. *Commonwealth*, 212 Mass. 50. The petitioner has a mill within the State and a sales office within the State, where it makes sales of its goods manufactured at its domestic mill to purchasers domiciled within the State, to whom those goods are delivered by intrastate commerce. Here is a complete business cycle from raw material through manufacturing processes and sale to delivery to the customer entirely conducted within the State. The permission to conduct this business depends wholly upon the consent of this Commonwealth. That permission may be withheld utterly to foreign corporations. It may be granted upon any terms which do not violate the Constitution. This Commonwealth cannot interfere with interstate commerce or deprive the foreign corporation of its property without due process of law. But, as was said in *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, at page 83, "A resort to the receipts of property or capital employed in part at least in interstate commerce, when such receipts or capital are not taxed as such but are taken as a mere measure

of a tax of lawful authority within the State, has been sustained. *Maine* v. *Grand Trunk Railway*, 142 U. S. 217. *Provident Institution* v. *Massachusetts*, 6 Wall. 611. *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 162–5. *United States Express Co.* v. *Minnesota*, [223 U. S. 335, 344.]" The foreign corporation tax law, having been upheld as constitutional in its application to facts not differing in any material respect from those here presented, it does not seem to us in the light of the decisions of the United States Supreme Court, to which reference has been made, to be transformed by St. 1914, c. 724, into an unconstitutional statute as applied to the facts now presented. It does not constitute an interference with or a burden upon interstate commerce. To the same effect in principle is *Crane Co.* v. *Looney*, 218 Fed. Rep. 260.

The statute does not deny equal protection of the laws to the petitioner. The laws of this Commonwealth have levied an excise tax both upon domestic and foreign corporations. But from the first until now there have been important differences of detail. The decisions heretofore cited all were made with reference to those differences and hence that factor alone is not of consequence. See also *St. Louis Southwestern Railway* v. *Arkansas*, 235 U. S. 350.

The petitioner contends that because it acquired its real estate in Massachusetts while the earlier law was in force, it is within the protection of *Southern Railway* v. *Greene*, 216 U. S. 400. The point of that case so far as it concerns the present facts is stated in the opinion in the Baltic Mining Company case, 231 U. S., at pages 87, 88, in these words: "In that case the railway company had gone into the State of Alabama and, under authority of the State, acquired a large amount of railroad property upon which it paid taxes as well as a license tax imposed by the State. After the payment of all such taxes and in this condition of affairs, the State undertook to levy upon the railroad company a privilege tax because it was a foreign corporation, not imposing the same tax upon domestic corporations doing precisely the same business. This court held that the railroad company was a person within the meaning of the Constitution and entitled to the equal protection of the laws and that by the taxation of its railroad property under such circumstances it was denied the equal protection of the law, no like tax being levied upon domestic corporations. It was said

in that case (page 416): 'We have here a foreign corporation within a State, in compliance with the laws of the State, which has lawfully acquired a large amount of permanent and valuable property therein, and which is taxed by a discriminating method not employed as to domestic corporations of the same kind, carrying on a precisely similar business.' The conditions existing in *Southern Railway* v. *Greene* are not presented here." It seems to us that a like conclusion must follow in the case at bar. It is matter of common knowledge that there are many mills in this Commonwealth for the manufacture of paper. There is nothing to indicate that they are not salable in the market at fair prices, or that paper mill property differs in regard to availability for sale and valuable use from other kinds of manufacturing property. *White Co.* v. *Commonwealth*, 218 Mass. 558, 579-581.

Moreover, the contention of the petitioner upon this point, if sound, would prevent this Commonwealth from increasing the burden of the excise upon a foreign corporation once it had established itself here and acquired a permanent place of business. It was pointed out in *S. S. White Dental Manuf. Co.* v. *Commonwealth*, 212 Mass. 35, 48, 49, that formerly the burden of taxation upon domestic was manifestly greater than upon foreign corporations. It is not certain that in general they may not still enjoy certain advantages over domestic corporations doing a like business. In the case at bar, it appears that the petitioner pays a lower rate upon its personal property located at its mill (because as a foreign corporation it is there taxed locally for its personal property) than a domestic corporation would pay on like personal property, so far as it contributes to that corporation's franchise value, because a domestic corporation is not taxable locally for such property, but it is taken into account in ascertaining the value of its franchise upon which it pays an excise tax. This arises from the fact that the local rate of taxation in Montague is less than the excise upon franchise value of domestic corporations. There is nothing upon this record to suggest that the excise tax law in its application to domestic and to foreign corporations is discriminatory against the latter. The two have stood side by side for many years in principle the same as now. It cannot be presumed in the absence of a definite showing of infraction of the Constitution that they cannot continue to be enforced. Without repeating what was

said in 212 Mass. 46, 49, and in *White Co.* v. *Commonwealth,* 218 Mass. 558, at pages 579, 580, it is enough to say that for the reasons there stated, in addition to those here appearing, the instant statute does not in its operation deny to the petitioner the equal protection of the laws nor establish any discrimination against it.

If, as the petitioner has argued, the statute discriminates in favor of the large and against the small corporations because of the smaller excise levied on corporations of over $10,000,000 capital, that is a matter which does the petitioner no harm and of which, therefore, it cannot complain. *McGlue* v. *County Commissioners,* 225 Mass. 59, and cases there collected. *Jeffrey Manuf. Co.* v. *Blagg,* 235 U. S. 571, 576. *Rail & River Coal Co.* v. *Ohio Industrial Commission,* 236 U. S. 338, 349.

It is contended that the excise is unreasonable in amount and is therefore unconstitutional. So far as this is a federal question it is concluded against the petitioner by the determination that it is conducting a purely local business as distinguished from an interstate business, and that, so far as it conducts both interstate and intrastate commerce, the two are distinct and separable. The petitioner is not a public service corporation directly engaged in interstate commerce for hire or otherwise, and it has the option of giving up the local commerce and business if it does not care to prosecute them under the excise imposed. "The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce," and this is true even though the receipts from the local business do not equal the expenses chargeable against such receipts. *Pullman Co.* v. *Adams,* 189 U. S. 420, 422. *Allen* v. *Pullman's Palace Car Co.* 191 U. S. 171, 181, 182. *Illinois Central Railroad* v. *Mississippi Railroad Commission,* 229 Fed. Rep. 248, 255.

.It is argued that the excise is "unduly great having reference to the real value" of the property of the petitioner within this Commonwealth, or to the amount of domestic business transacted here, and hence the statute must be unconstitutional under *Fargo* v. *Hart,* 193 U. S. 490, and *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 348. For the reason just stated, it does not seem to us that the point is open. It also appears not to be open because there is nothing to show the amount of the domestic business transacted by the petitioner within the Commonwealth. The

amount of its domestic business is stated only in percentages. The record is bare of anything from which can be calculated or inferred the actual amount of domestic business done here. The assessed valuation of its tangible property physically situated in Montague is given. It is required by law that that be assessed at its fair cash value. But neither its real value to the petitioner, its book value, its cost, nor its capitalized value are shown. It is said that not more than one and three fourths per cent in value of its total assets are in Massachusetts, and that its "total assets . . . amount in value to not less than $39,000,000 to $40,000,000;" but there is nothing to indicate how much greater than this figure the value of its assets may be. It seems to be manifest that there are not sufficient facts to determine whether the excise is excessive.

But, if it be assumed that that question is open to the petitioner and that it must be decided on this record, it cannot be said that the excise is excessive. The amount of the excise tax here in issue was $5,500. In itself that sum does not seem disproportionate. It is less than twice the fee annually charged in some cities in the Commonwealth for certain kinds of liquor licenses, where all the physical property engaged in the business also is subject to a property tax. The petitioner has extraordinarily large financial resources. It cannot be presumed that it may not be worth more to such a large corporation than it would be to a small one to be permitted to go into the local markets and compete for local business as a domestic manufacturer. We know of no principle of law which requires the conclusion that a license fee of that amount is unduly or unreasonably great, to a corporation of such large capital as the petitioner, for the privilege of admission to the local markets of this Commonwealth for the transaction of an intrastate business in the manufacture and sale of an undisclosed quantity of paper of undisclosed value and out of which an undisclosed profit is realized.

It does not appear needful to discuss in further detail the contentions put forward in behalf of the petitioner. The conclusion seems to us to follow from decisions heretofore made that the petitioner does not show that in any respect have its constitutional rights been infringed.

*Petition dismissed with costs.*